**CAPITAL BONDING CORPORATION,**
**Plaintiff,**

v.

**NEW JERSEY SUPREME COURT,**
**et al., Defendants.**

**Civil No. 00–4134(JBS).**

United States District Court,
D. New Jersey.

Jan. 30, 2001.

Joseph Wolfson, Stevens & Lee, PC, Cherry Hill, NJ, for plaintiff.

John J. Farmer, Jr., Attorney General of New Jersey, by Melissa E. Hager, Deputy Attorney General, Richard J. Hughes, Trenton, NJ, for defendants.

## OPINION

SIMANDLE, District Judge:

This case calls upon the Court to decide whether it should abstain from considering the merits of a challenge to the constitutional legitimacy of certain efforts by the New Jersey Court to improve the bail bond process within New Jersey. Plaintiff Capital Bonding Corp., a New Jersey company in the business of insuring bail bondsmen who post bail for criminal defendants in New Jersey, seeks to stay New Jersey Court Rule 1:13–3(e) (hereinafter "Rule 1:13–3", or the "new Rule") from going into effect.

This matter is before the Court upon plaintiff Capital Bonding Corporation's

motion for preliminary injunctive relief. Rule 1:13–3 precludes entities from engaging in the business of bail bonding under certain circumstances through their removal from the Bail Registry. The defendants, who are the Supreme Court of New Jersey and its members in their official capacities, contend that the new Rule will force those involved in the bail process to be more vigilant in making sure that criminal defendants show up to court, while the plaintiff asserts that the new rule is unduly punitive and contravenes its Due Process rights under the state and federal constitutions. More significantly, the plaintiff asserts that the new rule is a legislative enactment which exceeds the New Jersey judiciary's powers under the State Constitution and which contravenes New Jersey's insurance statutes. For reasons now discussed, the Court will abstain from reaching the merits of this case pursuant to the principles articulated in *Burford v. Sun Oil*, and this case shall be dismissed.

## I. *BACKGROUND*

New Jersey's courts, like most court systems, permit individuals and companies to post bail bonds for criminal defendants in return for a fee. Once the bondsman posts bail, it then becomes his responsibility to get the defendant to court. If the defendant fails to appear, then the bail posted is forfeited, and the bondsman either becomes responsible for the amount of bail or for ensuring that the fugitive defendant is captured and brought to court. The bondsman's obligation to satisfy the bail in the event the defendant absconds may be underwritten by insurance companies licensed to do business in New Jersey. This case involves the consequence of such a forfeiture to the insurance companies who back the individual bondsmen,

which may eventually lead to the removal of an insurance company's licensed insurance producers and limited insurance representatives from the Bail Registry, and hence from the opportunity to write bail bonds acceptable to the New Jersey courts, in the event the insurance company fails to satisfy a judgment or pay a forfeiture or timely request a hearing, all as described in the challenged procedure of Rule 1:13–3(e), as now discussed.

The Bail Registry is a list of licensed insurance producers[1] or limited insurance representatives,[2] licensed to write bail in the state of New Jersey. Members of the Registry are required to register the names and addresses of each of their insurance representatives authorized to write bail with the Superior Court pursuant to N.J.S.A. 17:22A–16.1. Names of licensed representatives are deleted from the bail registry when the insurance producer notifies the Superior Court that the bail bondsmen has been terminated. The New Jersey courts will not accept bail from bondsmen who are not listed on the Bail Registry. Thus, when a name is eliminated from the Bail Registry, that individual or entity cannot engage in the business of writing bail bonds.

The State of New Jersey has periodically made changes to the regulation of the bail bonding business. The state contends that in the past, bail bondsmen have been less than conscientious in their efforts to produce their clients at trial, allegedly believing that they would suffer little consequence as a result of their dereliction. In the past, if a defendant failed to appear, the courts generally entered a default judgment. If that judgment was not lifted, the bondsman or its insurer was then lia-

---

1. An insurance producer is "any person engaged in the business of an insurance agent, insurance broker or insurance consultant." N.J.S.A. 17:22A–2(j).

2. A limited insurance representative is
   a person who is authorized to solicit, negotiate or effect contracts for a particular line of insurance as an agent for an insurance

company authorized to write that line in [New Jersey] which by the nature of the line of business and the manner in which it is marketed to the public does not require the professional competency demanded for an insurance producer license. N.J.S.A. 17:22A–2(m).

ble for the forfeited bail. The surety providers suffered no other consequence, and continued to post bail for defendants regardless of their history of default judgments. As a result, it is argued, some of New Jersey's bail bondsmen routinely failed to make their bailees appear in court, and, because there is no additional incentive besides the individual default judgment to impel bondsmen to monitor whether their bailees appear, they have simply incorporated the occasional default judgment as a cost of doing business. The state maintains that as a result of these forfeitures, New Jersey has an enormous number of fugitives from justice who have failed to appear at their scheduled court hearings.

A brief discussion of the bail process in New Jersey helps clarify the origin of the present dispute. Historically, the administration of the bail process was bifurcated between the judiciary and the county clerks. The New Jersey judiciary was only responsible for the financial aspect of the process, i.e., the "posting and discharge" process. On January 11, 1994, the Governor signed into law the New Jersey Judicial Unification Act. Under Judicial Unification, the county clerks' judicial functions were transferred to the judiciary as of January 1, 1995, including the responsibility for the entire bail process. (See Certification of James Rutigliano (hereinafter "Rutigliano Cert.") at 1a–9a.) Thereafter, the judiciary convened an ad hoc committee to consider standardizing the bail forfeiture practice, and the committee reported its conclusions on May 30, 1997.

The Ad Hoc Committee found that while most bail forfeitures were not contested, there was a significant variance from county to county in the method of enforcement. The Committee suggested that "lax enforcement has led to a higher fugitive rate and reduced revenues." (*Report to Conference of Criminal Presiding Judges from Ad Hoc Committee on Bail Forfeiture,* May 30, 1997 (hereinafter "Ad Hoc Committee") at 6, Rutigliano Cert. at 20a.)

Among the Ad Hoc Committee's recommended solutions for these problems were that the bail process should be standardized statewide, and that the judiciary should take the lead in this effort. (Rutigliano Cert. at 24a.) The committee also recommended that the courts should know who has the authority to act as a surety for a bail company, and that the courts should adopt a policy of preventing surety companies with an outstanding bail forfeiture due from writing bail anywhere in New Jersey. (*Id.* at 31a.) Shortly after the committee issued its recommendations, the New Jersey Legislature enacted N.J.S.A. 17:22A–16.1, effective February 18, 1998. That statute specifically granted to the New Jersey judiciary the duty to keep a statewide Bail Bond Registry, and obligated the courts to set the requirements for the registry.

On March 24, 1998, the Chief Justice of the New Jersey Supreme Court issued an order implementing the Legislature's mandate to revise the bail process. The Clerk of the Supreme Court notified insurance companies involved in the bail process of the rule change in April 1998. (Rutigliano Cert. at 88a–89a.)

The judiciary's next step was to ensure that the plan was implemented uniformly. To this end, on June 25, 1998, the Clerk of the Superior Court sent information to the state's Trial Court Administrators about implementing the coordinated Superior Court Bail Bond Registry. Under the Superior Court's plan, the judiciary was obliged to have procedures to register and keep track of insurance producers and limited insurance representatives with authority to write bail bonds. The registry plan did not empower the Courts to license insurers, but did grant the judiciary the authority to register and accept bonds from Department of Insurance-licensed sureties and limited insurance representatives. (*Id.* at 4a.)

Next, the New Jersey Supreme Court amended the New Jersey Rules of Court to incorporate the Ad Hoc Committee's

recommendations.[3] Although the New Jersey Court Rules are enactments of the judicial branch, the Rules are constitutionally imbued with the power of legislation. As New Jersey's Appellate Division noted in the context of attorney discipline (another area within the New Jersey Supreme Court's exclusive jurisdiction), when the New Jersey Supreme Court promulgates the Court Rules, it does not act as an administrative agency exercising powers delegated to it by the Legislature. Rather, it is exercising powers which the New Jersey constitution vested in it as one of the three branches of the government. Thus, the adoption of a new Court Rule, although the action of the judicial branch, is " 'legislative in nature.' " *American Trial Lawyers Assoc. v. New Jersey Supreme Court,* 126 N.J.Super. 577, 589, 316 A.2d 19, *aff'd,* 66 N.J. 258, 330 A.2d 350 (1974) (quoting *Lathrop v. Donohue,* 367 U.S. 820, 81 S.Ct. 1826, 6 L.Ed.2d 1191 (1961)).

Effective September 1, 1998, the court amended New Jersey Court Rule 3:26–6 to streamline and standardize bail forfeiture practice. The amended Rule 3:26–6 allows a court to order forfeiture "on its own motion", provided that it provides affected party appropriate notice. *See Kinsella v. Kinsella,* 150 N.J. 276, 696 A.2d 556 (1997); *New Jersey Transit Corporation v. Borough of Somerville,* 139 N.J. 582, 661 A.2d 778 (1995). The Rule provided for a 45–day waiting period between notice of intent to order forfeiture and the actual entry of such an order. In practice, this 45–day period means that the defendant is given 45 days to turn himself in, or alternatively to object to the notice of default.

Even after the implementation of Rule 3:26–6,[4] the forfeiture process remained disorganized as to the consequences for "repeat offenders"—specific surety providers with a history of repeated bail forfeitures. In an effort to discourage repeated forfeitures, the New Jersey Supreme Court promulgated the Court regulation at issue here: Court Rule 1:13–3(e). This rule works in tandem with Rule 3:26–6, and provides for deterrent consequences even beyond the forfeiture of bail.

Effective September 5, 2000, Rule 1:13–3(e)[5] provides that within 45 days—or

3. The New Jersey Supreme Court promulgates the New Jersey Court Rules pursuant to Article VI, Section II, paragraph 3 of the New Jersey Constitution of 1947, which charges the Supreme Court with the responsibility for making rules governing the practice and procedure in and the administration of all of the courts in the State. The New Jersey Court Rules were promulgated effective September 15, 1948. The general purpose of the Rules "is to broaden the procedural powers of [New Jersey's] courts to the end that just dispositions on the merits may be facilitated and determinations on the basis of procedural niceties may be avoided." *Handelman v. Handelman,* 17 N.J. 1, 11, 109 A.2d 797 (1954) (quoting *Board of Commissioners of City of Newark v. Inlander,* 7 N.J.Super. 192, 72 A.2d 529 (App.Div.1950)).

4. Several defendant/fugitives and a surety company challenged Rule 3:26–6 in a consolidated matter encaptioned *State v. Polanca,* 332 N.J.Super. 436, 753 A.2d 1170 (App.Div. 2000), *cert. denied,* 165 N.J. 604, 762 A.2d 219 (2000). The surety company challenged the streamlining process on grounds similar to those asserted by the plaintiff in this case. In *Polanca,* as here, the plaintiffs alleged that the changes made to the bail forfeiture process were substantive, not procedural, and that the New Jersey Supreme Court lacked jurisdiction to effect such a change in the law. The *Polanca* plaintiffs further argued that when it effected the changes to the bail forfeiture process, the New Jersey courts had improperly taken over the role of another branch of government, and that the plaintiffs' state and federal Due Process rights were violated where the courts could *sua sponte* order forfeiture. The Appellate Division rejected all the *Polanca* plaintiffs' arguments, finding that the changes to the forfeiture process were lawful and that the plaintiffs' Due Process rights were adequately protected by notice and the 45–day waiting period. *Polanca,* 332 N.J.Super. at 443–444, 753 A.2d 1170.

5. N.J. Court Rule 1:13–3 provides:

(a) Approval by the Court. Neither the clerk of the court, the sheriff or any other person shall accept a surety bond in any action or proceeding pending in the court, other than a bond for costs given by a nonresident claimant, unless the same has been approved as to form and sufficiency by a judge of any court of this State except that a

approximately seven weeks—of a default the surety must either come forward with the fugitive, or pay the forfeited bail. This 45–day period does not begin to run until a court gives notice to the defendant to appear. The surety, after failing to produce the fugitive, is then obligated to pay the forfeited bail to the state under the contract formed when the state permitted the defendant to post bail in lieu of pre-trial incarceration. (Rutigliano Cert. at 101a–102a.) Rule 1:13–3(e) adds to Rule 3:26–3 in that, in addition to being required to pay the forfeited bail, the surety, and the insurance producer for which he is employed, will be precluded from writing new bail in the State of New Jersey until the matter is cleared up by producing the fugitive, paying the amount due, or posting an objection to the court giving notice of forfeiture. If the surety fails to do so, its name will be removed from the Bail Registry until the surety or the defendant satisfy the judgment caused by the forfeiture of bail.

The plaintiff in this action, Capital Bonding Corporation, filed the present motion for preliminary injunctive relief pursuant to Rule 65, Fed.R.Civ.P., in this Court on August 23, 2000, less than two weeks before the new Rule was to take effect. Plaintiff, a limited insurance representative, is among the largest bail bond compa-

surrogate may approve and accept a bond, and in the absence of a judge the clerk may approve and accept a bail bond. Bonds need not be filed in duplicate.

(b) Contents. All surety and bail bonds given in any court shall provide that the principal and surety thereby submit themselves to the jurisdiction of the court (or to the jurisdiction of the trial court, if the bond is given in an appellate court); that they irrevocably appoint the clerk of the court having jurisdiction as their agent upon whom papers affecting their liability on the bond may be served; that they waive any right to a jury trial; that the liability of the principal and surety may be enforced by motion in the action, if one is pending, without the necessity of an independent action; and that the motion may be served on the principal and surety by mailing it, by ordinary mail, to the clerk of the court, or to the surrogate in the case of a bond approved by the Chancery Division, Probate Part or the surrogate, who shall forthwith mail copies thereof by ordinary mail to the principal and surety at the addresses stated in the bond.

(c) Cash Deposit. Whenever a bond with sureties is required, the court, including the Surrogate, may by order allow a cash deposit in lieu thereof.

(d) Registry of Licensed Insurance Producers and Limited Insurance Representatives Authorized to Write Bail. Surety bonds for purposes of bail may be accepted only from those licensed insurance producers and limited insurance representatives who are registered by the insurance company for which they are authorized to write bail with the Clerk of the Superior Court as required by N.J.S.A. 17:22A–16. Such registration shall be effected by completing and submitting to the Clerk of the Superior Court an "Insurance Producer/Limited Representative Registration Form" in the form prescribed by Appendix XXI to these rules. The insurance company shall provide written notice to the Clerk of the Superior Court when any licensed insurance producer or limited insurance representative authorized to write bail is terminated.

(e) Removal from Bail Registry. Any licensed insurance producer or limited insurance representative shall have his or her name removed from an insurance company's listing in the Bail Registry upon any of the following occurrences: (1) notice from an insurance company of the individual's termination; (2) notice from the Insurance Commissioner of the suspension or revocation of any individual's license or registration privileges; and (3) revocation or suspension of an insurance company's authority to do business in this State or of its certificate of authority to write surety instruments. Further, *in the event any insurance company has failed to satisfy a judgment entered pursuant to R. 7:4–5(c), or to pay a forfeiture or to file a motion to vacate the forfeiture within fortyfive (45) days of the date of the notice sent pursuant to R. 3:26–6, the names of all of its licensed insurance producers and limited insurance representatives shall be removed from the Bail Registry until such time as the judgment or forfeiture has been satisfied. In that event, the individual licensed insurance producer or limited insurance representative who acted as bail bondsman shall also have his or her name removed from all listings in the Bail Registry until such time as the judgment or forfeiture has been satisfied.* (Emphasis added.)

nies in New Jersey, and has a stake in approximately 33% of the relevant market. (Certification of Vincent J. Smith, President of Capital Bonding Corp. ("Smith Cert.") ¶ 5.) Plaintiff asserts that this Court should stay Rule 1:13–3(e) for two main reasons: (1) the new rule violates the New Jersey constitution's separation of powers doctrine because in promulgating the rule New Jersey Supreme Court went beyond the rule-making powers conferred upon it by the New Jersey constitution, and is usurping the legislature's traditional role of regulating insurance; and (2) the new rule violates the federal constitution's Due Process and contracts clauses because it provides inadequate notice of forfeiture and preclusion to all levels of the bail process, and unlawfully interferes with the ability of bail bondsmen to do business with criminal defendants wishing to use their services.

Shortly after plaintiff filed the complaint herein, the New Jersey Supreme Court issued a Supplemental Order [6] buttressing

---

**6.** This Order, entitled *Re: Notice Requirements to Corporate Surety Companies, Licensed Insurance Producers and Limited Insurance Representatives Regarding Bail Forfeitures And Judgments*, provides:

It is **ORDERED** that effective January 2, 2001, Rules 1:13–3(e), 3:26–6(a) and 7:4–5 are relaxed and supplemented to set forth requirements for notice to corporate surety companies, licensed insurance producers, and limited insurance representatives when a court orders bail forfeited or enters a judgment of default that could preclude a corporate surety company's licensed insurance producers and limited insurance representatives from writing bail in the Superior and Municipal Courts; and it is further ORDERED that notice of forfeiture under Rule 3:26–6(a) shall include notice that failure to satisfy a judgment entered under Rule 3:26–6(c) will result in the removal of the names of all of the corporate surety company's licensed insurance producers and limited insurance representatives from the Bail Registry maintained by the Clerk of the Superior Court pursuant to Rule 1:13–3(e); and it is further

**ORDERED** that the notice of forfeiture under Rule 3:26–6(a) shall be served by ordinary mail on the corporate surety company, the licensed insurance producer, and the limited insurance representative(s) named on the Bail Recognizance at the address recorded in the Bail Registry; and it is further

**ORDERED** that judgments entered pursuant to Rule 3:26–6(c) will include notice that failure to satisfy the judgment will result in removal of the names of all of the corporate surety company's licensed insurance producers and limited insurance representatives from the Bail Registry; and it is further ORDERED that a copy of a judgment entered pursuant to Rule 3:26–6(c) will be served by ordinary mail on the corporate surety company, the licensed insurance producer, and the limited insurance representative(s) named in the judgment at the address recorded in the Bail Registry; and it is further

**ORDERED** that when bail is ordered forfeited pursuant to Rule 7:4–5(a), the municipal court administrator or deputy court administrator shall serve notice by ordinary mail on the defendant and the surety, including any corporate surety company, licensed insurance producer, and limited insurance representative(s) whose names appear on the Bail Recognizance, that judgment will be entered as to any outstanding bail, absent a written objection, seeking to set aside the forfeiture, within 45 days of the notice; and it is further

**ORDERED** that whenever notice of forfeiture is issued pursuant to Rule 7:4–5(a) to a corporate surety company, licensed insurance producer, and limited insurance representative(s) named on the Bail Recognizance, the notice shall be sent to the address of the corporate surety company, licensed insurance producer, and limited insurance representative(s) recorded in the Bail Registry; and it is further

**ORDERED** that whenever notice of forfeiture is issued pursuant to Rule 7:4–5(a) to a corporate surety company, licensed insurance producer, or limited insurance representative(s), the notice of forfeiture shall provide that failure to pay the bail or file a timely written objection seeking to set aside the forfeiture will result in the entry of a judgment and removal from the Bail Registry of the names of all of the corporate surety company's licensed insurance producers and limited insurance representatives in accordance with Rule 1:13–3(e); and it is further

**ORDERED** that a copy of a judgment entered pursuant to Rule 7:4–5(c) against a corporate surety company will be served by ordinary mail on the corporate surety company, the licensed insurance producer, and the limited insurance representative(s) named in the judgment at the address recorded in the Bail Registry; and it is further

**ORDERED** that judgments entered pursuant to Rule 7:4–5(c) will include notice that

the procedures for giving notice under Court Rules 1:13–3(e), *supra;* 3–26, *supra;* and 7:45 (affecting municipal court bail) effective January 2, 2001 (hereinafter "Supplemental Order").

Under the procedure outlined in the Supplemental Order, the courts shall provide notice to corporate sureties, licensed insurance producers, and limited insurance representatives at all points in the process after a defendant fails to appear at a scheduled court hearing. The Supplemental Order also clearly states that under Rule 3:26–6 failure to satisfy any default judgment will result in removal from the Bail Registry of the names of all involved corporate surety companies, licensed insurance producers, and limited insurance representatives. As an avenue for relief, the Supplemental Order provides that under Rule 3:26–6, a court *shall* review timely filed objections on the merits. (Supp. Order ¶ 10.)

The Court granted the parties an opportunity to submit additional briefing concerning the effect of the Supplemental Order. Unsurprisingly, they disagreed over the extent to which the Supplemental Order cured any notice deficiencies in Rule 1:13–3(e). The State argues that this Supplemental Order, coupled with the notice provisions of Rules 1:13–3(e) and 3:26–6, provides ample notice to corporate sureties, licensed insurance producers and limited insurance representatives, and provides an opportunity to be heard prior to their removal from the Bail Bond Regis-

try. Plaintiff acknowledges that the Supplemental Order adds an additional step to the removal procedure, namely, the sending of notice to the surety that a default judgment will within 15 days result in removal of all of the surety's limited insurance producers and limited insurance representatives from the Bail Registry until the judgment is satisfied. (Supplemental Order ¶ 9.) Nevertheless, plaintiff asserts—albeit without citation to supporting authority—that even under the Supplemental Order the notice is inadequate.

## II.  DISCUSSION

### A.  Eleventh Amendment Immunity

The State first argues that this motion and complaint should be dismissed because the suit violates the state's sovereign immunity under the 11th Amendment as embodied in the seminal case of *Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). This argument is misplaced because the plaintiff's suit seeks only injunctive relief.

■ Although the 11th Amendment bars suit for retrospective or compensatory relief, a plaintiff may sue the state in federal court where the relief sought is a prospective injunction or declaratory relief. *See Summit Medical Assoc. v. Pryor,* 180 F.3d 1326, 1337 (11th Cir.1999). Here, plaintiff has sued the New Jersey Supreme Court and its individual Justices claiming that they acted beyond their authority in enacting Rule 1:13–3(e). The suit does not

failure to satisfy the judgment will result in removal of the names of all of the corporate surety company's licensed insurance producers and limited insurance representatives from the Bail Registry; and it is further

**ORDERED** that upon receipt of a judgment entered pursuant to Rule 3:26–6(c) or 7:4–5(c), the Clerk of the Superior Court will serve notice, by certified mail, return receipt requested, on the corporate surety company, whose name appears on the judgment, at the address of the corporate surety company recorded in the Bail Registry that failure to satisfy the judgment within 15 days of the date of the notice will result in the removal of

the names of all of the corporate surety company's licensed insurance producers and limited insurance representatives from the Bail Registry until such time as the judgment has been satisfied; and it is further

**ORDERED** that Rules 3:26–6 and 7:4–5 shall be interpreted to require the court to review a timely filed objection on its merits and, in the discretion of the court, for good cause shown, to order a prejudgment hearing thereon; and it is further

**ORDERED** that Directive # 5–00 be revised and reissued to comply with the provisions of this Order.

seek monetary or retrospective relief, but instead asks the Court to stay the effect of the new rule pending consideration of its constitutionality. Accordingly, the Eleventh Amendment is not a bar to the injunctive relief sought, and this Court has jurisdiction because a federal question is presented in the complaint.

### B. *Abstention Doctrines*

The State argues that even if this Court does not dismiss this action under the Eleventh Amendment, it should nevertheless abstain from considering the merits of the present motion. In support of this argument, the State invokes the so-called *Burford* and *Pullman* abstention doctrines, named for the now-famous cases in which the Supreme Court first discussed the principle that there may be cases in which a federal court should decline to consider a dispute even where it has jurisdiction. *See Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943); *Railroad Commission of Tex. v. Pullman,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941); *see also Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) *and Juidice v. Vail,* 430 U.S. 327, 336, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977) (extending *Younger* abstention to decline review of order or procedures that are uniquely in furtherance of state courts' ability to perform their judicial functions).

■ While it is true that these federal abstention doctrines are well-developed, it is equally true that a federal court has the "virtually unflagging" obligation to adjudicate a claim within its jurisdiction. *Deakins v. Monaghan,* 484 U.S. 193, 203, 108 S.Ct. 523, 98 L.Ed.2d 529 (1988) (quoting *Colorado River Water Conservation Dist.,* 424 U.S. at 817, 96 S.Ct. 1236). Abstention is reserved for extraordinary situations, since it remains "the exception, not the rule." *Hawaii Housing Auth. v. Midkiff,* 467 U.S. 229, 239, 104 S.Ct. 2321, 81 L.Ed.2d 186 (1984) (quoting *Colorado River Water Conservation Dist.,* 424 U.S. at 813, 96 S.Ct. 1236).

■ The federal courts have recognized several exceptional circumstances where abstention is appropriate. Abstention is recognized, *inter alia,* to avoid deciding a federal constitutional issue when the controversy might be disposed of by resolution of an unsettled area of state law (*Pullman*), to avoid needless conflict with the administration by a state of its own affairs (*Burford*), to leave to the states unsettled questions of state law, *Louisiana Power & Light Co. v. City of Thibodaux,* 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959), and to avoid duplicative state and federal litigation, *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976).

These abstention doctrines derive in part from the notion that "Our Federalism" teaches that federal courts should refrain from hearing constitutional challenges to state action under circumstances where federal action might present an impermissible intrusion into the right of a state to enforce its own laws. *Chiropractic America v. Lavecchia,* 180 F.3d 99, 103 (3d Cir.), *cert. denied,* 528 U.S. 930, 120 S.Ct. 327, 145 L.Ed.2d 255 (1999) (citing *Younger,* 401 U.S. 37, 91 S.Ct. 746).

Abstention principles also come within the complex rubric of "comity." In the abstract, comity means a "proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways.' Minimal respect for the state processes, of course, precludes any *presumption* that the state courts will not safeguard federal constitutional rights." *Middlesex County Ethics Comm. v. Garden State Bar Ass'n,* 457 U.S. 423, 431, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982) (quoting *Younger,* 401 U.S. at 37, 91 S.Ct. 746) (emphasis in original).

In practice, observance of the principle of comity requires federal courts to recognize "'that certain matters are of state concern to the point where federal courts should hesitate to intrude; and they may also concern judicial "economy," the notion that courts should avoid making duplicate efforts or unnecessarily deciding difficult questions.'" *Chiropractic America,* 180 F.3d at 103 (quoting *Bath Memorial Hosp. v. Maine Health Care Fin. Comm'n,* 853 F.2d 1007, 1012 (1st Cir.1988)).

No matter which doctrine of abstention is invoked—*Pullman, Burford, Younger,* or some amalgam of thereof—the inchoate principles of federalism and comity flow throughout. As the Supreme Court has stated: "The various types of abstention are not rigid pigeonholes into which federal courts must try to fit cases. Rather, they reflect a complex of considerations designed to soften the tensions inherent in a system that contemplates parallel judicial processes." *Pennzoil Co. v. Texaco, Inc.,* 481 U.S. 1, 11 n. 9, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987).

■ Nevertheless, despite the well-established rules surrounding federal courts' discretion to abstain from certain disputes, the party arguing in favor of abstention bears a heavy burden of persuasion because abstention is to be the exception rather than the rule. *See Chiropractic America,* 180 F.3d at 103. Thus, this Court must determine whether the defendants are correct that plaintiff's facial challenge to N.J. Ct. Rule 1:13–3(e)'s provisions for notice and removal of insurers from the New Jersey Bail Registry presents an exceptional circumstance favoring federal court abstention.

### C. *Burford Abstention*

■ Defendants argue that *Burford* abstention is appropriate in this case because federal review of the challenged regulations would disrupt New Jersey's effort to regulate and reform its bail bond industry, an area of predominate state interest. Plaintiff responds that timely and ade-

quate state court review is not available under the circumstances of this case, and that this court's adjudication of its federal constitutional claims will not unnecessarily involve the court in parallel review of state regulations.

■ In *Burford,* the Supreme Court articulated for the first time a doctrine of abstention based on the principle that a federal court should avoid exercising its jurisdiction in a manner that would likely interfere with a state's attempt to regulate in a substantive area of predominate state interest. As the Supreme Court has framed it in the *NOPSI* case, *infra, Burford* analysis involves a two-stage test. First, a federal court sitting in equity should determine whether timely and adequate review of the challenged regulatory action is available in state court. Second, having decided that such review is available, the federal court, sitting in equity, must abstain if one of two circumstances are present: (1) "when there are 'difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case at bar'; or (2) where the 'exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.'" *New Orleans Public Service, Inc. v. Council of City of New Orleans,* 491 U.S. 350, 361, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989) ("*NOPSI* ") (quoting *Colorado River Water Conservation Dist.,* 424 U.S. at 814, 96 S.Ct. 1236).

### 1. *Availability of Timely and Adequate State Court Review*

The first step in the *Burford* abstention analysis is whether "timely and adequate state-court review" is available. *Chiropractic America,* 180 F.3d at 104. "Only if a district court determines that such review is available, should it turn to the other issues." *Id.* Because the Rule in question was promulgated by the New Jersey Su-

preme Court, the issue of adequate review becomes a complicated one. Any legal challenge to Rule 1:13–3 in the state system could potentially end up before the New Jersey Supreme Court. Thus, we are faced with a potential for circular rule-making whereby final review of Rule 1:13–3 will be in the hands of the body that originally effectuated it. This case therefore demands a careful analysis of the timely and adequate review prong under *Burford.*

The timely and adequate review inquiry under *Burford.* may be broken down into three component questions. First, because we here are dealing with the situation where a court rule is being challenged, it must be determined whether New Jersey's courts may review these rules as enacted ("macro" review), or may intervene to relax their consequences ("micro" review). Second, it must be determined whether the review is timely, meaning that it must not come so late as to be irrelevant. Third, the review must be adequate, meaning that there must be a meaningful chance to obtain the relief sought.

The first inquiry is whether review is available at all. The Court first turns to the question of whether there is review available in the "macro" sense, that is, whether the courts may review the rule itself. As is the case with all legislation, the constitutionality of the New Jersey Court Rules may be challenged in state court. For instance, in *American Trial Lawyers Assoc. v. New Jersey Supreme Court,* 126 N.J.Super. 577, 316 A.2d 19 (App.Div.), *aff'd,* 66 N.J. 258, 330 A.2d 350 (1974) (hereinafter *"ATLA"* ), the plaintiffs challenged the promulgation of Court Rule 1:21–7, which governs contingency fee arrangements. The *ATLA* plaintiffs claimed that the Supreme Court lacked the power to enact such a rule, and at any rate should have had an evidentiary hearing prior to enactment.[7] Accordingly, the plaintiffs argued, the substance and enact-

ment of the rule violated their Due Process and Contract Clause rights.

In ruling on the plaintiffs' claims, the trial court held that Court Rules may be challenged, as legislation is, to determine its constitutionality. *Id.* at 580, 316 A.2d 19. The trial court held that the Supreme Court had the power to enact the subject rule, but agreed with the plaintiffs that an evidentiary hearing was warranted and struck the rule as unconstitutionally enacted. The Appellate Division reversed. In a detailed opinion, the Appellate Division held that (1) there was no authority supporting the trial court's conclusion that the Supreme Court lacked the authority to regulate contingency fee arrangements, and (2) there was no record evidence that the rule was enacted without sufficient notice. The Appellate Division's ruling left intact the trial court's conclusion that the Court Rules are reviewable in the state courts. Indeed, as the New Jersey Supreme Court observed in its opinion affirming the Appellate Division, "[o]ur rules are never immutable. Applications for their review are never foreclosed." *ATLA,* 66 N.J. at 267, 330 A.2d 350. Based on the foregoing discussion, this Court finds that the New Jersey Rules of Court are susceptible to constitutional attack in the courts of New Jersey.

The next inquiry is whether any "macro" review of Court Rule 1:13–3 would be timely. If a party wishes to speed up the resolution of a matter of public importance, New Jersey law provides that a party may bypass the normal course of trial/appeal/petition for certification under certain limited circumstances. There are several options for litigants wishing to do so. First, the Court Rules provide that parties may bypass the trial courts and apply directly to the Appellate Division for relief in matters of public importance. N.J. Ct. Rule 2:10–5. A second option, under Rule 2:12–2(a), is that a party may bypass

---

7. Capital Bonding does not claim that it was not heard prior to the enactment of Rule 1:13–3(e), as the record reflects Capital Bond-ing had not responded to the published notice in the pre-adoption comment period, as discussed further below.

the Appellate Division and appeal directly to the Supreme Court. Thus, a party seeking expedited review may file directly with the Appellate Division and then, once the case is filed, petition the Supreme Court for direct review even before the Appellate Division decides the case. A third option is that, absent a direct appeal to the Supreme Court, the parties may invoke the Appellate Division's power to accelerate an appeal. Under Rule 2:9–2, the usual briefing and oral argument schedule "may be accelerated on the court's own motion or on the motion of any party." This mechanism would speed resolution should a litigant choose to have his claims heard in the Appellate Division.[8] Based on the foregoing, the Court finds that there are procedures available to Capital Bonding that would enable it to speedily apply to the Appellate Division or the Supreme Court for review of the Court Rule in question. In light of these demonstrations of the New Jersey courts' willingness and ability to move rapidly in appropriate cases, the Court finds that timely review is available.

The next inquiry is whether the available "macro" review is adequate. Plaintiff argues that adequate state court review is not available in this case because the lengthy process of following the state court suit through trial and appeal would simply prolong the allegedly inevitable outcome: the New Jersey Supreme Court's affirmance of its own Court Rule. An affirmance is inevitable, plaintiff argues, because the New Jersey Supreme Court would never find that its own rule is unconstitutional. The question then becomes whether the New Jersey Supreme Court could ever provide fair review of one of its own Rules of Court. The Court disagrees with the plaintiff's contention that the outcome of a review of Rule 1:13–3 by the New Jersey Supreme Court would be preordained. Any assumption that a state supreme court cannot be trusted to en-

force federal rights is "inappropriate," *see Deakins v. Monaghan,* 484 U.S. 193, 203, 108 S.Ct. 523, 98 L.Ed.2d 529 (1988) (citing *Stone v. Powell,* 428 U.S. 465, 493–494 n. 35, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976)). It is manifest that the Supreme Court would entertain argument that its decision to promulgate the new Rule was in error, and it would trivialize the principles of comity and federalism to presume that a state's highest court would do otherwise than to render a reasoned and just decision concerning such a challenge. Any concern about the Supreme Court's willingness to respond to concerns about Rule 1:13–3 was laid to rest by that court's actions subsequent to the filing of the present action in promulgating the Supplemental Order.

As detailed above, soon after the plaintiff filed the present application for injunctive relief, the Supreme Court *sua sponte* entered a Supplemental Order enhancing the notice provisions of the bail bond forfeiture and removal processes. This Supplemental Order provides that courts shall provide notice to corporate sureties, licensed insurance producers, and limited insurance representatives at all points in the process after a defendant fails to appear at a scheduled court hearing. The Supplemental Order also clearly states that under Rule 3:26–6, failure to satisfy any default judgment will result in removal of the names of all the corporate surety companies, licensed insurance producers and limited representatives from the Bail Registry. As an avenue for relief, the Supplemental Order provides that under Rule 3:26–6, a court may in its discretion review timely filed objections on the merits. Thus, under Rule 1:13–3 and the supplementation thereto, clear notice will be provided to all participants in the bail process of the consequences of a forfeiture. The Supreme Court's willingness to adjust the imple-

8. Moreover, if plaintiffs were to proceed directly to the Appellate Division or the Supreme Court on an application to stay the new Rule, the Court Rules permit supplementation of the record on appeal, including the presentation of live witnesses before a specially designated judge of the New Jersey Superior Court. *See* N.J. Court Rule 2:5–5(b).

mentation of Rule 1:13–3 to provide for additional notice, and to reiterate that any objection to a proposed removal may be raised and heard in court, is at the very least a display of the court's good faith willingness to consider the complaints of those who might be negatively affected by the Rule.

The plaintiff also could have obtained review of Rule 1:13–3 even before its enactment. As noted above, on January 19, 1998, Governor Whitman signed into law N.J.S.A. 17:22A–16, which reserved to the Superior Court the right to set the conditions for inclusion in the bail registry. Soon after, the Supreme Court implemented the legislature's mandate to revise the state's bail bond process, and the Clerk of the Supreme Court in April 1998 notified all insurance companies of the impending rule change. (Rutigliano Cert. at 88a.) At the end of this notice, the insurance companies are provided with a telephone number to call if they had questions about the registry process. There is no record that Capital Bonding ever called to object to this rule change, nor is there a record that they objected to notices sent out by the court concerning the amendments to other rules governing the bail registry or removal processes. The advance warning of the impending rule changes further supports a finding that timely and adequate review was available. Based on the foregoing, the Court concludes that timely and adequate review is (and has been) available if plaintiff chooses to mount a general challenge to Rule 1:13–3 in state court.

The Court next turns to the issue of whether there is timely and adequate review in the "micro" sense, that is, whether there is a procedure for review of individual removals from the bail registry under Rule 1:13–3. Under the terms of Rule 1:13–3 and the Supreme Court's Supplemental Order issued in November 2000, a plaintiff may contest both the bail forfeiture *and* the registry removal orders at a meaningful time in state court in certain cases. As we have discussed above, under

Court Rule 3:26–6, which provides the forfeiture mechanism, there is a mandatory 45–day waiting period between the time a court issues a notice of forfeiture and the actual entry of the forfeiture order. This waiting period provides criminal defendants and their bondsmen 45 days within which to object to the notice of default.

Rule 1:13–3 and the Supreme Court's Supplemental Order provide that a similar waiting period shall apply to sureties. The Supplemental Order also makes clear that notice will be sent out to the entire vertical hierarchy of participants in the bail process, from the bondsman up to the insurance producers that back them. Under Rule 1:13–3(e), all parties have at least 45 days within which to inform the forfeiture court of any circumstances that militate against removal from the bail registry. Thus, an aggrieved party, whether it be bail bondsman, or an entity backing that bondsman, has ample notice and opportunity to be heard under the forfeiture scheme at issue here, and to cure any default thereunder

Based on the foregoing discussion, the Court concludes that there is adequate and timely review available should the plaintiff choose to challenge the new Rule in state court. The New Jersey Supreme Court has provided, and continues to provide, good cause to believe that it would provide an impartial review of any challenge to Rule 1:13–3. Moreover, the procedural protections associated with the new Rule provide for ample opportunity to be hear prior to any forfeiture. Accordingly, the timely and adequate state court review prong of *Burford* is satisfied.

### 2. Coherent State Policy and the Public Interest

Having decided that the plaintiff has ample opportunity for review of the new Rule and any implementation thereof, the Court turns to consider whether the policies involved in this case mark it as one from which the Court should abstain under *Burford.*

Although the plaintiff has cloaked its claims in this case in federal constitutional language, it is manifest that the real dispute in this case is whether the New Jersey Supreme Court overstepped its authority when it took steps to decrease the fugitive rate in the criminal justice system by penalizing bail bond insurers when defendants fail to appear for court. The plaintiff argues its federal Due Process claims only meekly, and cites no authority supporting the notion that the federal Due Process requires the defendants to give more notice than the 45 days already provided under Rule 1:13–3.[9] If would be difficult to articulate a principled argument that the Constitution's Due Process clause is offended by a scheme that provides multiple notices and occasions to be heard (or to cure the default upon the bail bond by paying the judgment or producing the defendant) before imposing the final removal of the insurance producer and its limited insurance representatives from the bail registry. We are thus presented with murky federal constitutional claims of questionable merit.

The state law claims in this case, on the other hand, are more clearly defined. Plaintiff contends that bail bonding is a form of insurance, and any effort to reform the bail process must emanate from the New Jersey Commissioner of Insurance and not from the Supreme Court. Plaintiff presses this position despite the Legislature's mandate that the courts are to set the requirements for membership in the bail registry pursuant to N.J.S.A. 17:22A–16.1. This insurance theory thus presents a complicated and subtle issue of state constitutional law, not federal law, regarding the sharing of powers between the legislative and judicial branches of state government. Indeed, the plaintiff recognizes the delicacy of its position:

Capital Bonding does not contend that the New Jersey Supreme Court is pow-

erless in attempting to regulate bail bondsmen and its Bail Registry. The Court must Act, however, within the bounds of its rule-making jurisdiction. For example, if the Court wanted to aid in the enforcement of collection of forfeited bail bonds, they could enact a rule which requires the Superior Court to inform the Insurance Department of New Jersey that a surety is in default on a bond, and allow the Insurance Department to take any action it deems appropriate, within the power granted to it.

(Pl.'s Resp. to Defs.' Supp. Rep. Br. at 6.) It is evident from plaintiff's arguments that the federal claims here are of secondary importance. The real focus of this lawsuit is plaintiff's attempt to have Rule 1:13–3 declared illegal as a matter of state law because it allegedly exceeds the Supreme Court's authority with regard to licensed insurance producers.

The United States Supreme Court has acknowledged that federal adjudication of "a claim that a state agency has misapplied its lawful authority or has failed to take into consideration or properly weigh relevant state-law factors" may "disrupt the State's attempt to ensure uniformity in the treatment of an 'essentially local problem.'" NOPSI, 491 U.S. at 362, 109 S.Ct. 2506. Such abstention will be appropriate, as noted in NOPSI, 491 U.S. at 361, 109 S.Ct. 2506, where the "federal claims are 'in any way entangled in a skein of state law that must be untangled before the federal case can proceed,'" id. (quoting McNeese v. Board of Educ. for Comm. Unit School Dist. 187, Cahokia, 373 U.S. 668, 674, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963)).

The plaintiff alleges that the New Jersey Supreme Court acted arbitrarily and capriciously in adopting the challenged rule, that it exceeded the New Jersey legislature's grant of authority to regulate

9. Plaintiff's contracts clause arguments were dropped altogether from its supplemental briefs and appear to have no merit.

bail pursuant to 17:22A–16.1, and that the notice procedures involved in removing bail bond sureties from the registry fail to comport with the demands of Due Process. Because the New Jersey Supreme Court's Supplemental Order concerning notice to be given to sureties essentially erases any concerns may have existed concerning notice and opportunity to be heard, this case boils down to a basic question of state law: whether the New Jersey Supreme Court violated the New Jersey constitution when it promulgated Court Rule 1:13–3 because that rule is a regulation of the type reserved to the New Jersey Commissioner of Insurance. Thus, were this Court *not* to abstain, it would be necessary for us to plunge into the legal thicket of whether the New Jersey constitution permits the Supreme Court to promulgate rules that potentially impinge upon regulatory powers of executive agencies.

Turning to considerations of comity, that the rule at issue emanates from the New Jersey Supreme Court also contends for *Burford* abstention. Assuming *arguendo* that the plaintiff has the winning argument, this Court would then have to stay and/or strike a rule enacted by a co-equal and sovereign court, a result contrary to federalism and comity concerns in all but the clearest of cases. This is not to say that federal courts should abstain from every challenge of a state supreme court-promulgated rule. Indeed, the case most closely on point with the case at bar says the opposite. *See Felmeister v. Office of Attorney Ethics*, 856 F.2d 529, 534 (3d Cir.1988) (Becker, J.).

In *Felmeister*, the attorney-plaintiff challenged the New Jersey Supreme Court's attempt to regulate attorney advertising on the asserted grounds that the regulations violated his First Amendment and Due Process rights. The rule under attack was one of the New Jersey Rules of Professional Conduct, which have much the same force as the Court Rule at issue in this case. Under RPC 7.1, attorneys were forbidden from running "absurd" ads,

and could not use drawings, animation, or lyrics. *Felmeister*, 856 F.2d at 532. The Supreme Court also created a new administrative agency, the Supreme Court of New Jersey Committee on Attorney Advertising ("the Committee") to implement and report annually on the desirability of retaining the rule. *Id.* at 532.

The district court in *Felmeister* abstained under *Burford*, observing that "attorney advertising was an 'emerging, uncertain area' in which [t]here [wa]s indeed a substantial state interest in regulation by a state supreme court." *Id.* at 531. The district court also dismissed on the ground that the challenged regulation had not yet was not yet ripe for decision because the Committee had not yet issued its report concerning retention of the Rule.

The Third Circuit disagreed with the district court's decision to abstain under *Burford*. Beginning by questioning whether *Burford* abstention would ever be appropriate where substantial First Amendment issues were raised, the court went on to find that the regulation of attorney conduct "does not involve peculiarly local conditions, is not beyond the understanding of a federal court, and does not require special or technical expertise or interpretation of numerous other state regulations." *Id.* at 534. Although the *Felmeister* court ultimately affirmed, finding that the case was not ripe for decision, Judge Becker nonetheless found that the district court abused its discretion in abstaining under *Burford* because the attorney advertising scheme at issue presented basic First Amendment questions, and because federal review of the regulations at issue would not disrupt the state's effort to establish a coherent policy on a complicated local matter. *Id.* at 535.

Underlaying *Felmeister* is the issue of whether comity concerns preclude the exercise of federal jurisdiction over a challenge to a rule promulgated by a state supreme court. Despite the consistent emphasis on federalism in abstention jurisprudence, the *Felmeister* court had no

quarrel with the exercise of jurisdiction where the case involved predominantly federal constitutional issues, and where the challenged regulatory scheme was straightforward and non-local in flavor.

The legal landscape in this case is different. Here, if this Court were *not* to abstain, we would have to reach not only the rather insubstantial federal constitutional issues, but also the dominant and more doctrinally complex state law questions raised in plaintiff's complaint. Delving into the merits of plaintiff's separation of powers nullification claim under state law, even at the preliminary injunction stage, would require some analysis of whether the challenged rule, as it applies to bail bondsmen and their insurers, is inconsistent with the New Jersey Legislature's power to regulate insurance. Plaintiff has essentially argued that Rule 1:13–3(e) amounts to a an unauthorized use of judicial power by the state Supreme Court with respect to state-licensed insurers.

Any exercise of federal jurisdiction in this case would involve the Court in the interpretation of an area of state law having special connection to the state courts' interests in policing those insurers upon which the state ultimately relies for bail enforcement. A federal court judgment could have a significant disruptive effect on the state's efforts to reform the bail process in New Jersey's courts, reduce the fugitive rate, compel more criminal defendants to appear for court, and promote responsible practices by the insurers of bail bond obligations. There is virtually no federal interest in the regulation of bail bonding, which bridges the state's general police power to administer its criminal justice system. This Court's involvement could potentially undo a major state initiative in improving the bail process in New Jersey, and might interfere with the New Jersey Supreme Court's efforts to administer its own criminal justice system. In sum, the prospect that this Court must decide a complicated matter of fundamental state judicial concern interpreting un-settled questions of the division of legislative and judicial powers in New Jersey's constitutional regulatory scheme counsels in favor of abstention under *Burford.*

■ For these reasons, the Court concludes that *Burford* abstention is appropriate. In light of this holding, the court need not address whether abstention would also be appropriate under the *Pullman* abstention doctrine. When a district court decides to abstain on *Burford* grounds, the proper course is to dismiss the action. *See* 17A Charles Alan Wright, Arthur R. Miller and Edward H. Cooper, *Federal Practice & Procedure* § 4245 (2d ed.1988). Accordingly, the court dismisses plaintiffs' Complaint, without prejudice to plaintiff's right to file a similar challenge in state court.

### D.  *Ripeness*

■ Alternatively, this case also should be dismissed as nonjusticiable because it does not present a controversy ripe for decision. The chief demand in plaintiff's complaint is for a combination of injunctive and declaratory relief; specifically, plaintiff requests an Order from this Court declaring Rule 1:13–3 illegal under state and federal law. Because plaintiff has not suffered an actual deprivation, but has only speculated that it might someday be removed from the bail registry, the issue of ripeness must be examined even though the defendants have not raised the issue.

■ The ripeness doctrine derives from the requirement that federal courts only have subject matter jurisdiction over actual "cases" or "controversies". *See* U.S. Const. Art. III, § 2; *Presbytery of New Jersey of Orthodox Presbyterian Church v. Florio,* 40 F.3d 1454, 1462 (3d Cir.1994). Ripeness is a prerequisite to all federal actions, including those for declaratory or injunctive relief, and is sufficiently important that courts are required to raise the issue *sua sponte* even though the parties do not. *New Jersey Presbytery,* 40 F.3d at 1462; *Felmeister,* 856 F.2d 529, 535.

598

Ripeness is invoked by federal courts as a question of timing, *i.e.*, "to determine whether a dispute has yet matured to a point that warrants decision." 13A *Federal Practice and Procedure* § 3532 at 112. The "central concern" of the ripeness doctrine is "whether the case involves uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all." *Id.* With respect to the actions of state agencies, "considerations of ripeness reflect the need 'to protect th[os]e agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.'" *Felmeister,* 856 F.2d at 535 (quoting *Abbott Laboratories v. Gardner,* 387 U.S. 136, 148–49, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967)).

According to the Supreme Court, a determination of ripeness implicates two competing concerns: the fitness of issues for judicial review and the hardship to the parties if judicial consideration is withheld. *Abbott Laboratories,* 387 U.S. at 149, 87 S.Ct. 1507. Whether a question is fit for judicial review depends upon factors such as whether the agency decision is final; whether the issue presented for decision is one of law which requires no additional factual development; and whether further administrative action is needed to clarify the agency's decision. *Felmeister,* 856 F.2d at 535–36.

In this case, ripeness is absent. Under the first *Abbott* factor, fitness, the Court finds that this matter is not yet fit for judicial review because the harm asserted is only speculative. The new Rule has only recently gone into effect, and plaintiff can only point to the possibility of harm, namely, the potential that it may someday be removed from the bail registry. As discussed above, the expansive notice provisions set forth in Rule 1:13–3 and the Supplemental Order make it unlikely that a corporate surety such as Capital Bonding would not receive ample notice of an impending removal, together with an opportunity for a hearing before such a re-

moval is effectuated. Under the second *Abbott* factor, hardship, the Court finds that there will be no immediate or significant hardship if the plaintiff is not allowed to litigate here. Given the waiting periods and procedural safeguards built into the removal process outlined in Rule 1:13–3 and the Supplemental Order, for reasons already described plaintiff will have ample opportunity to challenge any removal from the registry in state court if such action is threatened.

*CONCLUSION*

For the reasons discussed above, the Court will abstain from exercising jurisdiction over plaintiff's complaint. The plaintiff's complaint shall be dismissed without prejudice under the principles of *Burford v. Sun Oil,* and on the alternative ground that this case does not present a controversy ripe for decision.