

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-17-2005

# Dobrek v. Phelan

Precedential or Non-Precedential: Precedential

Docket No. 04-3391

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Dobrek v. Phelan" (2005). *2005 Decisions.* Paper 597.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/597

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 04-3391

———

THOMAS L. DOBREK,

Appellant

v.

DONALD F. PHELAN, INDIVIDUALLY FOR
DAMAGES AND IN HIS OFFICIAL CAPACITY
AS CLERK OF THE SUPERIOR COURT OF THE
STATE OF NEW JERSEY FOR PROSPECTIVE RELIEF

———

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 04-cv-00313)
District Judge:  Honorable Jerome B. Simandle

———

Argued March 31, 2005
Before:  ALITO, SMITH, and FISHER, *Circuit Judges*.

(Filed August 17, 2005)

Joseph M. Pinto (Argued)
Joseph F. Polino, P.C.
720 East Main Street, Suite 1C
Moorestown, NJ  08057
    *Attorney for Appellant*

Tracy E. Richardson (Argued)
Office of Attorney General of New Jersey
Division of Law
25 Market Street
Trenton, NJ  08625
    *Attorney for Appellee*

———

OPINION OF THE COURT

———

FISHER, *Circuit Judge*.

This case presents the issue of whether the debts of a commercial bail bondsman are excepted from discharge, i.e., non-dischargeable, in a Chapter 7 bankruptcy proceeding under 11 U.S.C. § 523(a)(7).  Though this precise issue is one of first impression in the Circuit, in *In re Gi Nam*, 273 F.3d 281 (3d Cir. 2001), we considered the related issue of whether the bail bond debts of an individual family member acting as a surety are excepted from discharge under § 523(a)(7).  Relying on the plain meaning of the statute, the purpose and context of Pennsylvania's bail forfeiture laws, and public policy considerations, we determined in *Gi Nam* that such bail bond debts are non-dischargeable.  Because we are persuaded by the reasoning of *Gi Nam* and the soundness of its

2

expanded application to commercial bondsmen in New Jersey, we will affirm the judgment of the District Court.

## I. FACTS

New Jersey courts permit individuals and companies to post bail bonds for criminal defendants in return for a fee. *See Capital Bonding Corp. v. N.J. Supreme Court*, 127 F. Supp. 2d 582, 584 (D.N.J. 2001) (explaining this system). Once the bondsman posts bail for an accused, it becomes the bondsman's responsibility to produce the defendant for required court proceedings. *See id.* If the defendant fails to appear, then the bail posted is "forfeited," and the bondsman becomes responsible for the amount of bail or for ensuring that the fugitive defendant is captured and brought to court. *Id.* The bondsman's obligation to satisfy bail in this circumstance may be underwritten by insurance companies licensed to do business in New Jersey. *Id.*

Appellant Thomas Dobrek ("Dobrek") is an insurance representative licensed to write bail bonds in New Jersey. Prior to filing a Chapter 7 bankruptcy petition in the United States Bankruptcy Court for the District of New Jersey, Dobrek was, at different times, an authorized agent of various commercial surety companies. In connection with this work, Dobrek was listed on the New Jersey Bail Registry ("Bail Registry"), a list of insurance producers and limited insurance representatives licensed to write bail bonds in New Jersey. *See Capital Bonding Corp.*, 127 F. Supp. 2d at 584. Individuals who are not listed on the Bail Registry cannot engage in the business of writing bonds in that state.[1]

---

[1]In New Jersey, surety bonds for purposes of bail may be accepted only from licensed insurance producers and limited insurance representatives who are registered by the insurance

3

As an agent who executed bail bonds on behalf of surety companies, Dobrek, like all other such agents in New Jersey, was responsible for the contractual default of these companies in the event that a defendant failed to appear in court, at least to the extent of being precluded from writing additional bonds until the bail forfeiture judgments were satisfied. *In re Preclusion of Brice*, 841 A.2d 927, 929 (N.J. Super. Ct. App. Div. 2004). In other words, in instances where defendants failed to appear, judgment was entered against both the commercial sureties and Dobrek, as the signer of the bail bond. *See id.* As a result, Dobrek was jointly bound to pay to the court any amount of money specified in a court order setting bail where a defendant failed to appear at any required court proceedings. *See id*.

Dobrek filed his Chapter 7 bankruptcy petition on October 29, 2002. On January 25, 2003, he received a discharge from the Bankruptcy Court, relieving him of all debts which arose before that date pursuant to 11 U.S.C. § 727.[2]

---

company for which they are authorized to write bail with the Clerk of the Superior Court. N.J. R. 1:13-3(d) ("No surety bond for purposes of bail shall be accepted by any court unless the insurer has first filed with the Clerk of the Superior Court a Bail Program Registration Form in the form prescribed by Appendix XXI to these rules.").

[2]Section 727 of the Bankruptcy Code provides in pertinent part:

> Except as provided in section 523 of this title, a discharge under subsection (a) of this section discharges the debtor from all debts that arose before the date of the order for relief under this chapter, and any liability on a claim that is determined under section 502 of this title as if such claim had arisen

New Jersey Court Rule 1:13-3(e)(2) requires the removal of any bail agents, agencies, guarantors, and other persons or entities authorized to administer or manage an insurer's bail bond business from the Bail Registry for failure to satisfy a judgment. N.J. R. 1:13-3(e)(2).[3] Consequently, on January 29, 2003, Dobrek's name

> before the commencement of the case, whether or not a proof of claim based on any such debt or liability is filed under section 501 of this title, and whether or not a claim based on any such debt or liability is allowed under section 502 of this title.

11 U.S.C. § 727(b) (2004). Thus, a discharge pursuant to § 727 does not discharge debts within the scope of § 523(a)(7).

> [3]New Jersey Court Rule 1:13-3(e)(2) provides:
>
> If a registered insurer fails to satisfy a judgment entered pursuant to R. 3:26-6(c) or R. 7:4-5(c), the Clerk of the Superior Court shall forthwith send the insurer a notice informing it that if it fails to satisfy the judgment within fifteen days of the notice, it shall be removed from the Bail Registry until satisfaction is made. Further, the insurer's bail agents and agencies, guarantors, and other persons or entities authorized to administer or manage its bail bond business in this State will have no further authority to act for it. Their names, as acting for the insurer, will be removed from the Bail Registry. In addition, the bail agent or agency, guarantor, or other person or entity authorized by the insurer to administer or manage its bail bond business in this State who acted in such capacity with respect to the forfeited bond will be precluded, by

was removed from the Bail Registry due to accumulated bail forfeitures resulting from bails in which Dobrek had been the producer for corporate sureties. As a result, Dobrek could not continue to write bail bonds in New Jersey.

On January 27, 2004, Dobrek commenced this action in the United States District Court for the District of New Jersey. The Defendant in the matter, Donald Phelan ("Phelan"), is the Clerk of the Superior Court for the State of New Jersey and is responsible for maintaining the Bail Registry. The crux of Dobrek's Complaint is that he was wrongfully removed from the Bail Registry because his bail bond debts were discharged in bankruptcy pursuant to 11 U.S.C. § 727. Dobrek's Complaint specifically alleges that Phelan (i) willfully or otherwise violated the discharge injunction pursuant to 11 U.S.C. § 524(a) and the protections against discriminatory treatment of debtors afforded under 11 U.S.C. § 525(a) by refusing to reinstate Dobrek's name to the Bail Registry and attempting to force him to pay discharged debts; (ii) violated 42 U.S.C. § 1983 by depriving Dobrek of his rights, privileges, and immunities secured by the Constitution and Federal statutes of the United States, specifically the Supremacy Clause and the Bankruptcy Clause of the United States Constitution and 11 U.S.C. § 524(a) and 11 U.S.C. § 525(a); and (iii) intentionally or negligently inflicted emotional distress upon Dobrek.

On May 14, 2004, Phelan filed a Motion to Dismiss. Dobrek responded to that motion and filed a Cross Motion for Partial Summary Judgment on June 10, 2004. On August 4, 2004, the

removal from the Bail Registry, from so acting for any other insurer until the judgment has been satisfied.

N.J. R. 1:13-3(e)(2).

6

District Court found that Dobrek's bail bond debts were not discharged pursuant to § 523(a)(7), and accordingly, granted Phelan's Motion to Dismiss and denied Dobrek's Cross Motion for Partial Summary Judgment. Dobrek filed a timely notice of appeal on August 16, 2004. Before this Court, Dobrek alleges that the District Court erred in its determination that these debts were excepted from discharge in bankruptcy pursuant to § 523(a)(7). More generally, he argues that the indebtedness of an individual bail bondsman on a defaulted bail bond written as an agent for a corporate surety is dischargeable under Chapter 7 of the Bankruptcy Code.

## II. STANDARD OF REVIEW

This Court exercises plenary review over the District Court's grant of a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). *Alston v. Parker*, 363 F.3d 229, 232-33 (3d Cir. 2004) (citing *Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996)). The Court must take all factual allegations and reasonable inferences as true and view them in the light most favorable to the Plaintiff. *Mariana v. Fisher*, 338 F.3d 189, 195 (3d Cir. 2003), *cert. denied*, 540 U.S. 1179 (2004). Thus, the Court should affirm the District Court's dismissal only if it appears that the Plaintiff could prove no set of facts that would entitle him to relief. *Alston*, 363 F.3d at 232-33 (citing *Nami*, 82 F.3d at 65). Furthermore, this appeal presents questions of law which this Court reviews *de novo*. *United States v. Hendricks*, 395 F.3d 173, 176 (3d Cir. 2005).

## III. DISCUSSION

The starting point of any statutory analysis is the language of the statute. *Pa. Dep't of Pub. Welfare v. Davenport*, 495 U.S. 552, 557-58 (1990). Under § 523(a)(7), a discharge in bankruptcy does not discharge a debtor from debt "to the extent such debt is for a fine,

penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss, other than a tax penalty . . . ." 11 U.S.C. § 523(a)(7) (2004). Thus, in order for debts to be non-dischargeable in bankruptcy under § 523(a)(7), they must satisfy the three requirements of that section. Because the parties do not dispute that the bail bond debts are "payable to and for the benefit of a governmental unit" and not "compensation for actual pecuniary loss, other than a tax penalty," we address ourselves solely to the question of whether the debt at issue is a "fine, penalty, or forfeiture" within the meaning of § 523(a)(7).

When interpreting statutes or regulations, the first step is to determine whether the language at issue has a plain and unambiguous meaning. *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 450 (2002) (citing *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997)). The inquiry ends if the statutory language is unambiguous and the statutory scheme is coherent and consistent. *Id.* (citing *Robinson*, 519 U.S. at 340). The plain meaning of "forfeiture" as used in § 523(a)(7) is unambiguous. As we noted in *Gi Nam*, a "'forfeiture' is defined in *Black's Law Dictionary* as 'a divestiture of specific property without compensation; . . . [a] deprivation or destruction of a right in consequence of the nonperformance of some obligation or condition.'" 273 F.3d at 286 (citing BLACK'S LAW DICTIONARY 650 (6th ed. 1990)). Consistent with our analysis in *Gi Nam*, Dobrek's judgments arose from the various defendants' nonperformance of their obligations to appear in court and Dobrek's and the commercial sureties' breach of duty to produce those defendants. *Cf. id.* at 286. As such, the plain meaning of "forfeiture" appears to encompass the judgments against Dobrek.

Nonetheless, in the event the words and provisions are "ambiguous -- that is, whether they are reasonably susceptible of different interpretations," *Nat'l R.R. Passenger Corp. v. Atchison*

*Topeka & Santa Fe Ry. Co.*, 470 U.S. 451, 473 n.27 (1985) – we look next at the surrounding words and provisions and also to the words in context. *Whitman v. Am. Trucking Ass'n.*, 531 U.S. 457, 466 (2001) ("Words that can have more than one meaning are given content, however, by their surroundings."). Considering "forfeiture" in the context of § 523(a)(7), that section excepts from discharge any debts to the extent they are for a "fine, penalty, or forfeiture." A "fine" or "penalty" are both means of inflicting monetary sanctions, traditionally by the government, against a debtor for some particular action or inaction. Thus, defining "forfeiture" to encompass Dobrek's bail bond debts would be consistent and conform with these terms. *Cf. Gi Nam*, 273 F.3d at 286 (noting that the judgments "against [the family surety] arose from [the defendant's] nonperformance of his obligation to appear in court and [the family surety's] breach of his duty to produce [the defendant] for trial").

Construing "forfeiture" in this way is also consistent with our prior determination in *Gi Nam*. In *Gi Nam*, we faced a similar question involving the bail bond debts of a non-appearing defendant's father, who acted as a bail bond surety for his son. *Id.* at 283. In that case, the defendant was charged with several crimes, including murder, robbery, and burglary. *Id.* Bail was set at $1 million, conditioned on a ten percent cash payment by the surety to assume legal responsibility for paying the full amount of bail to the Commonwealth of Pennsylvania. *Id.* The defendant's father agreed to serve as surety for the bail, and accordingly, when the defendant failed to appear in court for a pre-trial status listing in his criminal case, the court ordered the bail bond forfeited and entered judgment against the defendant's father. *Id.* at 283-84. Subsequently, the defendant's father petitioned for Chapter 7 bankruptcy and listed the City of Philadelphia as the creditor on a claim arising from the bail bond security. *Id.* at 284. The City filed a Complaint in Adversary alleging that although the defendant's father listed the bail bond

9

judgment as an "'unsecured non-priority claim,'" the debt was not in fact dischargeable pursuant to § 523(a)(7). *Id.* at 284-85. The bankruptcy judge disagreed, found the debt dischargeable under § 523(a)(7), and granted the bankruptcy petitioner's motion to dismiss. *Id.* at 285. The decision was later affirmed by the District Court. *Id.* at 285. On appeal, we reversed, holding that § 523(a)(7) excepts from discharge in a Chapter 7 bankruptcy a bail bond forfeiture judgment entered against a family surety for failure to produce the defendant for trial. *Id.* at 294.

In *Gi Nam*, we first considered the plain meaning of § 523(a)(7) and in particular, the term "forfeiture." *Id.* at 286-88. As noted, *supra*, we looked to the dictionary definitions of "forfeiture" and concluded that a plain text reading of § 523(a)(7) encompassed the judgment against the defendant's father, which arose from the defendant's nonperformance of his obligation to appear in court and the father's breach of his duty to produce the defendant for trial. *Id.* Second, we considered the state law context of bail bond debts and determined that these debts were characterized as forfeitures under Pennsylvania law. *Id.* at 288-89. We also reviewed the legislative history of § 523(a)(7), which we found strongly suggests that Congress intended the sort of forfeiture entered against the defendant's father to come within the exception from dischargeability set forth in that section. *Id.* at 289.

Finally, we discussed the public policy considerations at issue with respect to discharging these debts. *Id.* at 292-94. Initially, we noted our concern with "socioeconomic fairness" *vis-a-vis* the average accused felon who is unlikely to have an economically advantaged family, versus an accused felon whose family can afford to post bail resulting in the accused's release. *Id.* at 293. We reasoned that this disparity in treatment, though inadvertent, could open the door to accusations of differential treatment between

10

wealthy and poor accused criminals.  *Id.*  We also considered the possibility that finding bail bond forfeitures dischargeable here would encourage the use of federal bankruptcy laws to evade the financial consequences of noncompliance with a bail bond agreement.  *Id.*  Additionally, we discussed the implications of discharging these debts under federal bankruptcy laws with respect to principles of comity and federalism.  *Id.*  In this regard, we noted that federal bankruptcy courts should not invalidate the results of state criminal proceedings by erasing these debts through discharge in bankruptcy.  *Id.*  Finally, we considered the "perverse incentives" created by allowing family surety obligations to be dischargeable in bankruptcy, namely that a defendant's incentive to appear for trial would be diminished because he knows that his family would evade financial responsibility, and that a family surety would not be deterred from assisting the defendant in his flight.  *Id.* at 293-94.

Nonetheless, *in dicta* in *Gi Nam*, we addressed and rejected the applicability of some of these policy considerations to commercial bondsmen (although clearly stating we were not addressing the question of professional sureties).  273 F.3d at 294 n.9.  Indeed, there we suggested that the bail bond debts of a commercial bondsman may be dischargeable in bankruptcy.  *Id.*  "But in any event, this Court is bound by holdings, not language."  *Alexander v. Sandoval*, 532 U.S. 275, 282 (2001).  As such, in spite of our earlier disavowal of the applicability of *Gi Nam's* reasoning to commercial bondsmen, upon further reflection, we conclude that many of the policy concerns of *Gi Nam* apply with equal force to commercial bondsmen.  In particular, allowing commercial bondsmen to discharge bail bond debts in bankruptcy could encourage the use of federal bankruptcy laws to evade the financial consequences of noncompliance with a bail bond agreement.  Indeed, while bail forfeitures are "an anticipated cost of doing business," a bail bondsman would certainly prefer to avoid these debts.  *Id.* at 294 n.9.  Should a commercial bondsman be

11

allowed to discharge these debts in bankruptcy, bankruptcy could become an attractive option over satisfying one's financial obligations to the state. Additionally, should the bail bond debts of a commercial bondsman be dischargeable in bankruptcy, the state's criminal proceedings may effectively be invalidated, triggering comity and federalism concerns. The non-appearing or fugitive defendant would be out of the state's custody and the professional bondsman would no longer have any incentive to produce him in court.

A review of New Jersey's statutory treatment of these bail bond judgments also suggests that these debts are considered "forfeitures" under state law. Indeed, "[a]lthough the label that state law affixes to a certain type of debt cannot of itself be determinative of the debt's character for purposes of the federal dischargeability provisions, such state-law designations are at least helpful to courts in determining the generic nature of such debts . . .." *Gi Nam*, 273 F.3d at 288. Rule 3:26-6 of the New Jersey Rules of Court provides, in part:

> Upon breach of a condition of a recognizance, the court on its own motion shall order forfeiture of the bail, and the finance division manager shall forthwith send notice of the forfeiture, by ordinary mail, to county counsel, the defendant, and any surety or insurer, bail agent or agency whose names appear on the bail recognizance. . . . The notice shall direct that judgment will be entered as to any outstanding bail absent a written objection seeking to set aside the forfeiture, which must be filed within 75 days of the date of the notice. The notice shall also advise the insurer that if it fails to satisfy a judgment entered pursuant to paragraph (c), and until satisfaction is made, it shall be removed from the Bail Registry . . . .

12

> In addition the bail agent or agency, guarantor or other person or entity authorized by the insurer to administer or manage its bail bond business in this State who acted in such capacity with respect to the forfeited bond will be precluded, by removal from the Bail Registry, from so acting for any other insurer until the judgment has been satisfied.

The terms "forfeiture" or "forfeited bond" are employed several times throughout this rule and refer expressly to the same type of bail bond debts in question in *Gi Nam*. Although the state law designations are not "determinative" in this analysis, they are, as the *Gi Nam* Court stated, at least helpful in deciding the generic nature of these debts. *See Gi Nam*, 273 F.3d at 288 (examining Pennsylvania law). Accordingly, the state law context of Dobrek's debts reinforces our conclusion that they are "forfeitures" within the meaning of § 523(a)(7).

We also find this approach to be consistent with *Kelly v. Robinson*, 479 U.S. 36 (1986), where the Supreme Court decided the somewhat analogous issue of whether restitution obligations imposed as conditions of probation in state criminal proceedings are dischargeable under § 523(a)(7). In *Kelly*, the Supreme Court held that restitution obligations are not subject to discharge under § 523(a)(7). *Id.* at 53. In so holding, the Court opined:

> On its face, [§ 523(a)(7)] creates a broad exception for all penal sanctions, whether they be denominated fines, penalties, or forfeitures. Congress included two qualifying phrases; the fines must be both 'to and for the benefit of a governmental unit,' and 'not compensation for actual pecuniary loss.' Section

13

> 523(a)(7) protects traditional criminal fines; it codifies
> the judicially created exception to discharge for fines.

*Id.* at 51. Upon determining that § 523(a)(7) "protects traditional criminal fines," the Court then considered whether restitution is encompassed within this category. *Id.* at 51-53. While the Court conceded that restitution resembles a judgment 'for the benefit' of the victim, as opposed to 'for the benefit of a governmental unit' as required by § 523(a)(7)'s language, it nonetheless determined that because criminal proceedings focus on the state's interest in rehabilitation and punishment rather than the victim's desire for compensation, restitution orders imposed in such proceedings operate "for the benefit" of the state. *Id.* at 52. Thus, the Court concluded that these obligations, also a means of inflicting monetary sanctions against a debtor for some particular action or inaction, are non-dischargeable. *Id.* at 53.

We recognize that other Circuits to have considered the nature of a commercial bondsman's bail forfeiture debts have concluded that these obligations are dischargeable in bankruptcy. *See In re Hickman*, 260 F.3d 400, 405 (5th Cir. 2001); *In re Collins*, 173 F.3d 924, 932 (4th Cir. 1999). These Circuits interpreted § 523(a)(7) as contemplating *only* those fines or obligations imposed because of misconduct or wrongdoing by the debtor, consistent with their interpretation of the Supreme Court's *Kelly v. Robinson* decision. *See In re Hickman*, 260 F.3d at 405 (finding bail bond debts by commercial surety not encompassed by § 523(a)(7) because their "true nature" is contractual, not penal); *In re Collins*, 173 F.3d at 932 (finding bail bond debts by commercial surety not encompassed by § 523(a)(7) because debts more akin to "triggering liquidated damages" for breach of contract than triggering a penal sanction). We have not adopted this alternative reading of *Kelly*, however. Indeed, in *Gi Nam*, we expressly rejected this interpretation, noting, "We do

14

not interpret *Kelly* to imply that the 'fine, penalty or forfeiture' prong of § 523(a)(7) is restricted in scope to except from dischargeability only obligations of a penal nature." 273 F.3d at 287. We further distinguished *Kelly* on the basis that the Supreme Court only addressed the penal nature of restitution obligations because the plain language of § 523(a)(7) fails to address restitution expressly. *Id.* Accordingly, because forfeitures are expressly addressed in § 523(a)(7), the *Gi Nam* court did not need to examine their "nature," whether penal or contractual. *Id.* Relying on the plain meaning of the statute, whether bail bond debts are of a criminal nature is irrelevant to the question of whether they are discharged.

## IV. CONCLUSION

Because we read the text of § 523(a)(7) to encompass the type of bail bond debts at issue here, and because we are persuaded by the reasoning in *Gi Nam*, we hold that § 523(a)(7) excepts from discharge bail bond forfeitures entered against a commercial bail bondsman. For the foregoing reasons, we will affirm the judgment of the District Court.

15