United States Court of Appeals
Fifth Circuit

**F I L E D**

**May 22, 2007**

Charles R. Fulbruge III
Clerk

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 05-20501
_____

IN THE MATTER OF: GERALDINE H. SOILEAU

Debtor.

-------------------------

STATE OF TEXAS,

Appellant,

versus

GERALDINE H. SOILEAU,

Appellee.

On Appeal from the United States District Court
for the Southern District of Texas

Before JONES, Chief Judge, and WIENER and PRADO, Circuit Judges.

Wiener, Circuit Judge:

The State of Texas ("the State") appeals the decisions of the bankruptcy and district courts denying the State's motion to dismiss the petition of Geraldine Soileau ("Soileau") for Chapter 7 bankruptcy protection. The State's challenge is grounded exclusively in Eleventh Amendment sovereign immunity, and the bankruptcy court and district court ruled on that ground alone. As the Supreme Court's decisions in <u>Central Virginia Community College</u>

v. Katz[1] and <u>Tennessee Student Assistance Corp. v. Hood</u>[2] establish that the discharge of a debt like Soileau's is not barred by such immunity, the bankruptcy court had jurisdiction. We therefore affirm the denial of the State's dismissal motion.

## I. Facts and Proceedings

The facts pertinent to this case are undisputed. As a licensed bail bondsman, Soileau served as surety on bail bonds for numerous criminal defendants in Texas. Over time, fifty-five of these defendants absconded while out on bail. The State sued Soileau as those defendants' surety and obtained state court money-judgments against her. In April 2004, Soileau filed a petition under Chapter 7 of the Bankruptcy Code, in which she sought to discharge a total of $650,897.71 in such judgments.

Two weeks later, the State moved to dismiss on sovereign immunity grounds, claiming that its refusal to consent to being made a party to the bankruptcy proceedings deprived the bankruptcy court of jurisdiction over it. Shortly thereafter, the bankruptcy court denied the State's motion, relying on both <u>Hood</u> and on our pre-<u>Hood</u> and pre-<u>Katz</u> decision in <u>Hickman v. State of Texas</u> (<u>In re Hickman</u>).[3] The State appealed to the district court, but it

___

[1]    546 U.S. 356 (2006).

[2]    541 U.S. 440 (2004).

[3]    260 F.3d 400 (5th Cir. 2001). As we shall more fully demonstrate below, the bankruptcy court's refusal to deny discharge of Soileau's judgment debts owed to the State was compelled by <u>Hood</u> alone; consideration of our earlier decision in

affirmed.  The State then timely filed a notice of appeal to this court.

## II. ANALYSIS

### A.    Standard of Review

In reviewing cases originating in bankruptcy, we "perform the same function, as did the district court: Fact findings of the bankruptcy court are reviewed under a clearly erroneous standard and issues of law are reviewed <u>de novo</u>."[4]

### B.    Eleventh Amendment Sovereign Immunity: <u>Hood</u> and <u>Katz</u>

The only issue presented by this appeal is whether, on grounds of Eleventh Amendment sovereign immunity, the State may avoid discharge of Soileau's forfeiture judgments incurred as surety on bail bonds issued to the State in conformity with its statutory scheme.[5]  Under the Eleventh Amendment, the jurisdiction of the federal courts "shall not be construed to extend to any suit in law

<u>Hickman</u> was wholly unnecessary.  Not only do <u>Katz</u> and <u>Hood</u> leave no doubt that sovereign immunity does not bar the discharge involved in this case, <u>Hickman</u> is inapposite, as the State here acknowledges, because it was neither based nor decided on a claim of sovereign immunity by Texas.  <u>Hickman</u> was argued and decided exclusively on a statutory interpretation of the Bankruptcy Code. In contrast, the only legal theory asserted by the State today is Eleventh Amendment sovereign immunity, albeit the State noted in passing its continuing disagreement with <u>Hickman</u>.

[4]    <u>Nationwide Mut. Ins. Co. v. Berryman Prods.</u> (<u>In re Berryman</u>), 159 F.3d 941, 943 (5th Cir. 1998).

[5]    As we discuss more fully below, the State did not argue, either before us or to the lower courts, that Soileau's debt should be nondischargeable by virtue of § 523(a)(7) of the Bankruptcy Code.

3

or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."[6]  As interpreted, however, the Eleventh Amendment is not limited to its text; the Supreme Court has "repeatedly held that an unconsenting State also is immune from suits by its own citizens."[7]  Despite this general prohibition of suits against a non-consenting or non-waiving state, "[s]tates, nonetheless, may still be bound by some judicial actions without their consent."[8]  Hood and Katz, both recent Supreme Court cases addressing sovereign immunity in the bankruptcy context, provide two such examples; and their holdings inform our analysis of the State's claim today.

In Hood, the debtor had signed promissory notes for educational loans guaranteed by the Tennessee Student Assistance Corporation ("TSAC"), a governmental corporation created by the State to administer student loans.  Early in 1999, Hood filed a Chapter 7 bankruptcy petition and was granted a general discharge that did not cover her student loans.  Later that year, Hood reopened her petition, filing an adversary proceeding against, inter alia, TSAC, seeking a determination by the bankruptcy court that her student loans were dischargeable.  TSAC sought dismissal

---

[6]     U.S. CONST. amend. XI.

[7]     Hood, 541 U.S. at 446 (collecting cases).

[8]     Id.

on sovereign immunity grounds.[9]

The bankruptcy court concluded that Hood's debt to the state was dischargeable, rejecting TSAC's contention that the court lacked jurisdiction because of sovereign immunity. A Bankruptcy Appellate Panel ("BAP") affirmed, as did the Sixth Circuit Court of Appeals thereafter.[10] The Supreme Court granted certiorari to determine whether the Bankruptcy Clause of the Constitution[11] "grants Congress the authority to abrogate state sovereign immunity from private suits."[12]

The Hood Court affirmed the BAP and the Court of Appeals, but did so without reaching the broader question whether 11 U.S.C. § 106(a)[13] is a valid abrogation of sovereign immunity. The Court held more narrowly that "a proceeding initiated by a debtor to determine the dischargeability of a student loan debt is not a suit against the State for purposes of the Eleventh Amendment."[14] As the

---

[9]    Id. at 443-45.

[10]   Id. at 445.

[11]   The Bankruptcy Clause states that Congress shall have the power "[t]o establish . . . uniform Laws on the subject of Bankruptcies throughout the United States." U.S. CONST. art. 1, § 8, cl. 4.

[12]   Hood, 541 U.S. at 443.

[13]   Section 106(a) provides, in part, "[n]otwithstanding an assertion of sovereign immunity, sovereign immunity is abrogated as to a governmental unity . . . with respect to" delineated sections of the Bankruptcy Code. 11 U.S.C. § 106(a).

[14]   Hood, 541 U.S. at 443.

Court explained, "[t]he discharge of a debt by a bankruptcy court is . . . an <u>in</u> <u>rem</u> proceeding," as the bankruptcy court is concerned with the estate of the debtor.[15] The Court in <u>Hood</u> concluded that, "[a]t least when the bankruptcy court's jurisdiction over the res is unquestioned, our cases indicate that the exercise of its <u>in</u> <u>rem</u> jurisdiction to discharge a debt does not infringe state sovereignty."[16]

The Supreme Court went on in <u>Hood</u> to reject another of TSAC's contentions, <u>i.e.</u>, that because the proceedings to challenge the dischargeability of a student loan debt were inherently adversarial,[17] the discharge of the student loan debt was an infringement on state sovereignty. In rejecting this argument, the Court ruled that, despite the adversarial nature of the proceeding, "the bankruptcy court's jurisdiction is premised on the res, not the on the persona . . . . A debtor does not seek monetary damages or any affirmative relief from a State by seeking to discharge a debt; nor does he subject an unwilling State to a coercive judicial

---

[15]    <u>Id.</u> at 447 (The bankruptcy court's "jurisdiction is premised on the debtor and his estate, and not on his creditors.").

[16]    <u>Id.</u> at 448 (citation omitted).

[17]    Under 11 U.S.C. § 523(a)(8), student loan debts guaranteed by the government are presumed to be nondischargeable. To obtain a discharge of these debts, the debtor must therefore demonstrate that excepting the debt from the discharge order would impose "undue hardship." 11 U.S.C. § 523(a)(8).

6

process.  He seeks only a discharge of his debts."[18]  Accordingly, the Court held that, for purposes of the Eleventh Amendment, the undue-hardship determination under § 523(a)(8) of the Bankruptcy Code is not a suit against the state.[19]

In Katz, decided two years after Hood and two years after Soileau filed her Chapter 7 petition, the Court assayed to answer the question left open in Hood, viz, "whether Congress' attempt to abrogate the states sovereign immunity in 11 U.S.C. § 106(a) is valid."[20]  Katz involved a proceeding initiated by a bankruptcy trustee under Sections 547(b) and 550(a) of the Bankruptcy Code to set aside the debtor's pre-petition preferential transfers of funds to state agencies.[21]  The State contended that sovereign immunity

---

[18]    Hood, 541 U.S. at 450.

[19]    Id. at 451.

[20]    Katz, 546 U.S. 356, 126 S. Ct. 990, 995 (2006).

[21]    Section 547(b) of the Bankruptcy Code states:

Except as provided in subsections (c) and (i) of this section, the trustee may avoid any transfer of an interest of the debtor in property--
(1)  to or for the benefit of a creditor;
(2)  for or on account of an antecedent debt owed by the debtor before such transfer was made;
(3)  made while the debtor was insolvent;
(4)  made--
     (A)  on or within 90 days before the date of the filing of the petition; or
     (B)  between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
(5)  that enables such creditor to receive more than such creditor would receive if--

barred the proceedings to avoid and recover the preferential transfers.[22]  The Court concluded that the transfer did not offend state sovereign immunity, holding that, "[i]n ratifying the Bankruptcy Clause [of the United States Constitution], the States acquiesced in a subordination of whatever sovereign immunity they might otherwise have asserted in proceedings necessary to effectuate the <u>in</u> <u>rem</u> jurisdiction of the bankruptcy courts."[23] Discussing the transfer involved in <u>Katz</u>, the Court held that "[i]nsofar as orders ancillary to the bankruptcy courts' <u>in</u> <u>rem</u> jurisdiction, like orders directing turnover of preferential

---

     (A)   the case were a case under chapter 7 of this title;
     (B)   the transfer had not been made; and
     (C)   such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b).

Under Section 550(a) of the Bankruptcy Code,

[e]xcept as otherwise provided in this section, to the extent that a transfer is avoided under[, <u>inter</u> <u>alia</u>,] section . . . 547 . . . of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from--
(1)   the initial transferee of such transfer or the entity for whose benefit such transfer was made; or
(2)   any immediate or mediate transferee of such initial transferee.

11 U.S.C. § 550(a).

[22]   <u>Katz</u>, 126 S. Ct. at 994-95.

[23]   <u>Id.</u> at 1005.

8

transfers, implicate States' sovereign immunity from suit, the States agreed in the plan of the Convention not to assert that immunity."[24]

## C.   Application of Hood and Katz

Applying Hood and Katz to the instant case, we conclude that the State here has no claim to sovereign immunity. Whatever uncertainty there may be as to the outer limits of the holdings of Katz and Hood, at the very least they together establish beyond cavil that an in rem bankruptcy proceeding brought merely to obtain the discharge a debt or debts by determining the rights of various creditors in a debtor's estate —— such as is brought here —— in no way infringes the sovereignty of a state as a creditor.[25]

There can be no serious question that the proceeding at issue here is purely in rem: The bankruptcy court's exercise of jurisdiction is focused only on Soileau's estate. Katz describes three crucial facets of the exercise of in rem jurisdiction that prevent it from interfering with state sovereign immunity: (1) exercise of jurisdiction over the estate of the debtor, (2) equitable distribution of the estate's property among creditors,

_____

[24]    Id. at 1002.

[25]    Katz, 126 S. Ct. at 1000 ("In ratifying the Bankruptcy Clause, the States acquiesced in a subordination of whatever sovereign immunity they might otherwise have asserted in proceedings necessary to effectuate the in rem jurisdiction of the bankruptcy courts."); Hood, 541 U.S. at 448 ("At least when the bankruptcy court's jurisdiction over the res is unquestioned, our cases indicate that the exercise of its in rem jurisdiction to discharge a debt does not infringe state sovereignty.").

9

and (3) discharge.[26]  In this case, the State challenges the <u>in</u> <u>rem</u> discharge of a debt, a specie of imposition on the states' sovereignty undeniably countenanced by <u>Katz</u> and <u>Hood</u>.

To the extent that <u>Hood</u> implies in a footnote that there could possibly be some exercise of <u>in</u> <u>rem</u> jurisdiction that conceivably might offend the sovereignty of the state,[27] "such concerns are not present here."[28]  Indeed, Soileau's is even a stronger case for rejection of the State's sovereign immunity defense than was <u>Hood</u>'s or <u>Katz</u>'s.  <u>Hood</u>, after all, addressed an adversarial proceeding involving a state, and <u>Katz</u> addressed an order for the avoidance of preferential transfers to a state to allow the trustee to recoup those transfers from the state's treasury — each proceeding

---

[26]    <u>Id.</u> at 996 ("Critical features of every bankruptcy proceeding are the exercise of exclusive jurisdiction over all of the debtor's property, the equitable distribution of that property among the debtor's creditors, and the ultimate discharge that gives the debtor a 'fresh start' by releasing him, her, or it from further liability for old debts.").

[27]    <u>Hood</u>'s footnote 5 states:

This is not to say, "a bankruptcy court's <u>in</u> <u>rem</u> jurisdiction overrides sovereign immunity," as Justice Thomas characterizes our opinion, but rather that the court's exercise of its jurisdiction to discharge a student loan debt is not an affront to the sovereignty of the State.  Nor do we hold that every exercise of a bankruptcy court's <u>in</u> <u>rem</u> jurisdiction will not offend the sovereignty of the State.  No such concerns are present here, and we do not address them.

<u>Hood</u>, 541 U.S. at 451 n.5 (quoting <u>United States v. Nordic Village, Inc.</u>, 503 U.S. 30, 38 (1992)).

[28]    <u>Id.</u>

10

carrying with it some of the trappings traditionally associated with a suit against a state.  Soileau's, in contrast, carries none:  She is neither seeking the return of any funds already in the State's possession nor bringing an adversarial proceeding against the State.  She asks nothing more than that the bankruptcy court exercise its _in rem_ jurisdiction over her bankruptcy estate by adjudicating the rights of the State as a creditor.  As such an exercise of _in rem_ jurisdiction is indisputably contemplated by _Katz_,[29] the State's sovereign immunity claim must fail.

## D.  _Hood's_ Footnote Five and _Hickman_

That should be the end of this appeal, disposing of the case as it does on the sole issue raised by the State, _viz._, sovereign immunity.  But our co-panelist ("the Concurrer") has opted to make a collateral attack on our six-year old precedent in _Hickman v. Texas_'s[30] construction of § 523(a)(7) of the Bankruptcy Code.  In the special concurrence, the concurrer writes that, although "_Hood_ and _Katz_ may dispose of any Eleventh Amendment sovereign immunity claim that Texas could[31] raise here, . . . those cases do not

---

[29]  _Katz_, 126 S. Ct. at 1004 ("The ineluctable conclusion, then, is that States agreed in the plan of the Convention not to assert _any_ sovereign immunity defense they might have had _in proceedings brought pursuant to 'Laws on the subject of Bankruptcies_.'") (emphasis added).

[30]  260 F.3d 400, 406 (5th Cir. 2001).

[31]  The Concurrer's use of "could" here is misleading, as it suggests that it is merely theoretical that the State might raise this claim when the State _has_ raised a sovereign immunity claim.  In contrast, it _has not_ challenged the dischargeability

11

resolve whether the Bankruptcy Code in fact authorizes the discharge of Soileau's defaulted bail bonds." The Concurrer urges that, because our prior precedent in Hickman requires us to find that Soileau's judgment debt was contractual in nature, we are "bound to apply Hickman and reject the State's nondischargeability claim." The gravamen of the Concurrer's writing is that Hickman was wrongly decided, so we should now rehear Soileau's case en banc to abrogate the 2001 rule in Hickman. We respectfully disagree with that proposal. Here's why.

In Hickman, as here, a bail bondsman filed for bankruptcy, seeking to discharge all debt from her bail bond business. The State filed a complaint to determine whether her debts to it were dischargeable. Significantly, Texas did not claim Eleventh Amendment sovereign immunity in Hickman as it does here against Soileau, arguing in Hickman only that, because the debt was a forfeiture, it was nondischargeable under the Bankruptcy Code, specifically 11 U.S.C. § 523(a)(7). This provision of the Bankruptcy Code specifies, in relevant part, that the debt of an individual debtor is nondischargeable to "the extent such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit." The Hickman bankruptcy court agreed with the State, but the district court reversed, holding that bail bond forfeitures were not the type of penal forfeiture contemplated by

_____

of the debt under § 523(a)(7), implicitly acknowledging that our precedent in Hickman forecloses such a claim.

12

§ 523(a)(7).[32] Neither opinion turned on sovereign immunity or on § 106(a) of the Bankruptcy Code. Neither, as we shall show, did the Hickman opinion turn on the contractual nature of the debtor's bail bond obligation to the State, as the Concurrer represents it.

On appeal, we held that:

> [Bankruptcy Code section] 523(a)(7) excludes from discharge only those forfeitures imposed because of misconduct or wrongdoing by the debtor. Hickman's debt arising from her failure to fulfill her contractual obligation to the State as a surety on a criminal bail bond is not the sort of punitive or penal forfeiture rendered nondischargeable by § 523(a)(7).[33]

In so holding, we expressly rejected the argument advanced by Texas that finding bail bond forfeiture debts dischargeable would undermine the effective administration of its criminal justice system.[34]

With due respect to the position advocated in the special concurrence, this case is not the appropriate vehicle for a reexamination of Hickman's holding, as the State has not advanced what the Concurrer refers to as a "nondischargeability claim." Rather, the only legal theory asserted by the State both today and before the lower courts is Eleventh Amendment sovereign immunity. In its brief to us, for example, the State clarified that its "[m]otion in the present case claims sovereign immunity. The State

---

[32]    In re Hickman, 260 F.3d at 401.

[33]    Id.

[34]    Id. at 406.

13

does not even raise an issue concerning the dischargeability of Soileau's criminal bail bond forfeiture judgments."[35] Likewise, at oral argument, the State observed that "this case is not concerned directly with the issue of whether the Fifth Circuit's decision [regarding the dischargeability of bail bond judgments in Hickman] is accurate."

Although both the State and the lower courts did address Hickman, they did so only in the context of determining whether, under Hood's footnote five, discharge in the instant case would offend the State's sovereign immunity, not whether the debt was dischargeable vel non. Indeed, the State criticized the lower courts in its brief to us, asserting that they had "fail[ed] to distinguish and apply the State's claim of sovereign immunity from the question of dischargeability of debt with both courts relying on the In re Hickman case, which . . . did not even involve a sovereign immunity issue."[36] The special concurrence similarly conflates the State's sovereign immunity argument with this so-called "nondischargeability claim" — a claim not advanced to us or

<hr>

[35]     (Emphasis added).

[36]     In its reply, the State does suggest that "the Fifth Circuit, in light of [the Third Circuit's holding in Dobrek v. Phelan, 419 F.3d 259 (3d Cir. 2005)], may wish to reconsider its position in Hickman . . . on the dischargeability of criminal bond forfeiture judgments." Nevertheless, Texas does not expressly challenge the dischargeability of Soileau's debts under § 523(a)(7) in the face of our binding precedent in Hickman; rather, it concludes by requesting that "the decisions of the bankruptcy court and the district court be reversed allowing the State to claim sovereign immunity in the bankruptcy court."

14

to the lower courts.  As the issue of dischargeability was never raised,[37] we limit our holding to the issue before us — whether discharge of Soileau's debt impermissibly infringes on the State's sovereign immunity.

Even assuming arguendo, however, that there is in fact a "statutory question raised here," as the Concurrer suggests, Hickman's holding that § 523(a)(7) only excludes from discharge those debts incurred by wrongdoing or misconduct — and that judgments against the sureties on bail bonds (as distinguished from "forfeitures" by the defaulting principals), such as the one at issue here are dischargeable — should not be revisited.  Although no effort to rehear Hickman was mounted before its mandate issued in 2001, the Concurrer now seeks to use the instant appeal to challenge Hickman en banc by contending "[t]hat Soileau owes a forfeiture debt to a governmental entity should be dispositive" that the debt is nondischargeable.  Contrary to the Concurrer's position, however, Hickman's interpretation of § 523(a)(7) is consistent with the established definitions of that section's exclusive trio of fines, penalties, and forfeitures.

From the standpoint of statutory construction, "forfeiture" in § 523(a)(7) must be understood in light of its relationship to the other nouns in that section's exclusive list, i.e., "fine" and

---

[37]    See Robinson v. Guarantee Trust Life Ins. Co., 389 F.3d 475, 481 n. 3 (5th Cir. 2004) ("Failure adequately to brief an issue on appeal constitutes waiver of that argument.").

15

"penalty." According to Black's Law Dictionary, a forfeiture is: (1) "[t]he divestiture of property without compensation," (2) "[t]he loss of a right, privilege, or property because of a crime, breach of obligation, or neglect of duty," (3) "[s]omething (esp. money or property) lost or confiscated by this process; a penalty", (4) "A destruction or deprivation of some estate or right because of the failure to perform some obligation or condition contained in the contract."[38] The American Heritage Dictionary defines a forfeiture as "the act of surrendering something as a forfeit,"[39] then defines forfeit as "something surrendered as punishment for a crime, offense, error, or breach of contract."[40] Although these definitions alone might leave open the possibility that the type of judgment debt at issue here should be considered a forfeiture for purposes of § 523(a)(7), Congress's synonymizing use of "forfeiture" with "penalty" and "fine" supports <u>Hickman</u>'s more narrow interpretation of this section as applicable only to takings grounded in wrongful acts and effectuating a punishment therefor.[41] In <u>Hickman</u>, we explained:

> A penalty is "[a]n elastic term with many different

---

[38]     <u>Black's Law Dictionary</u> 677 (8th ed. 2004).

[39]     <u>American Heritage Dictionary</u> 515 (ed. William Morris, 1976).

[40]     <u>Id.</u>

[41]     As we recognized in <u>Hickman</u>, "a word is known by the company it keeps." <u>In re Hickman</u>, 260 F.3d at 403 (quoting <u>Gustafson v. Alloyd Co., Inc.</u>, 513 U.S. 561, 575 (1995)).

16

shades of meaning; it involves [the] idea of punishment, corporeal or pecuniary, or civil or criminal, although its meaning is generally confined to pecuniary punishment." Black's Law Dictionary 1133 (6th ed. 1990). Central to the definition of penalty is the "idea of punishment"-"[p]unishment imposed on a wrongdoer, esp. in the form of imprisonment or fine. Though usu. for crimes, penalties are also sometimes imposed for civil wrongs." Black's Law Dictionary 1153 (7th ed. 1999). The term penalty, however, may also include "[t]he sum of money which the obligor of a bond undertakes to pay in the event of his omitting to perform or carry out the terms imposed upon him by the conditions of the bond," Black's Law Dictionary 1133 (6th ed. 1990), or "[e]xcessive liquidated damages that a contract purports to impose on a party that breaches." Black's Law Dictionary 1153 (7th ed. 1999). Although focusing on punishment for criminal and civil wrongs, the definition of penalty, like forfeiture, could be read expansively to include the [bail bondsman's] debt. A fine, on the other hand, relates solely to "[a] pecuniary punishment or civil penalty payable to the treasury." Black's Law Dictionary 647 (7th ed. 1999).[42]

The Hickman court summarized, "[t]he definitions of penalty and fine reflect the traditional understanding of the these terms as punitive or penal sanctions imposed for some form of wrongdoing. Their inclusion in § 523(a)(7) implies that Congress intended to limit the section's application to forfeitures imposed upon a wrongdoing debtor."[43]

Mindful of "the principle that exceptions to discharge are to be narrowly construed,"[44] we agree with Hickman's interpretation of

---

[42]  Id. at 403-04.

[43]  Id. at 404.

[44]  Id. at 404 (quoting In re Tran, 151 F.3d 339, 342 (5th Cir. 1998)); see also In re Walker, 48 F.3d 1161, 1164-65 (11th Cir. 1995) (noting "obligation to construe strictly exceptions to discharge to give effect to the fresh start policy of the

17

§ 523(a)(7) as excepting from discharge only those debts incurred as a result of misconduct or wrongdoing.  Indeed, this holding is consistent with the purpose of the Bankruptcy Code and, specifically, with § 523(a).[45]  We cannot overemphasize here the importance of the distinction between the absconding criminal defendants as principals and the bail bondsmen as sureties: The former would properly be denied discharge on their own cash or property bonds as "forfeitures" in the § 523(a)(7) sense, but the latter are not forfeiting wrongdoers; they are ordinary judgment debtors who are not guilty of any wrongful conduct that should prohibit discharge in bankruptcy.

The Concurrer maintains that "Hickman's conclusion that '[b]ail bond judgments are not penal sanctions . . . but rather arise from a contractual duty,' is . . . at odds with over a century of Texas precedent" characterizing bail bond judgments as criminal in nature.  Whatever the merits of this argument, it fails

---

Bankruptcy Code").

[45]    Lines v. Frederick, 400 U.S. 18, 19 (1970) (per curiam) ("The most important consideration limiting the breadth of the definition of 'property' lies in the basic purpose of the Bankruptcy Act to give the debtor a 'new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of pre-existing debt. The various provisions of the Bankruptcy Act were adopted in the light of that view and are to be construed when reasonably possible in harmony with it so as to effectuate the general purpose and policy of the act.'") (quoting Local Loan Co. v. Hunt, 292 U.S. 234, 244-45 (1934) (citations omitted)); In re Cross, 666 F.2d 873, 880 (5th Cir. 1982) ("The exceptions to discharge found in [§ 523(a) ] were designed to prevent the bankrupt from avoiding through bankruptcy the consequences of certain wrongful acts ...").

to render the debts at issue nondischargeable, as determination of the dischargeability of judgment debts like Soileau's does not turn on whether that debt was contractual, statutory, or criminal in nature. Rather, it turns on whether the debt was incurred as a result of the bail bondsman's wrongful acts. A bail bondsman's judgment debt to the state, arising as it does solely from a criminal defendant's wrongful act of absconding, is not the result of any act of misconduct or wrongdoing by the bail bondsman. As the Fourth Circuit observed in In re Collins,

> '[i]t cannot be said that [the bail bondsman] was being punished by virtue of incurring these [bail bond] obligations. [He] committed no criminal or penal act which gave rise to such debts. These bail bond forfeiture obligations, as to [him], arose from a purely financial and contractual arrangement.'[46]

This is so whether the proceedings to recover the judgment debt are labeled criminal or contractual. Thus, Soileau's judgment debts are properly dischargeable —— even though, we repeat, that question is not presented here.

Allowing Soileau's debts to the State to be discharged, insists the Concurrer, would impermissibly "invalidate the results of state criminal proceedings," as the Supreme Court has instructed the federal courts may not do.[47] We do not question the degree of importance of the bail bond surety in the broad scheme of Texas's

___

[46] In re Collins, 173 F.3d 924, 932 (4th Cir. 1999) (quoting In re Paige, No. 86 B 8072 C, 1988 WL 62500, *4 (Bankr. D. Colo. Apr. 15, 1988)).

[47] Kelly v. Robinson, 479 U.S. 36, 47 (1986).

criminal justice system. We disagree, however, that the discharge of the bail bondsman's debt "invalidate[s] the results of state criminal proceedings." Bail bonds in state criminal proceedings, after all, are designed primarily to make criminal defendants either (1) appear or (2) pay a forfeiture —— only secondarily to make bail bondsmen pay. The State's (and the Concurrer's) parade of horribles that today's holding will produce in relation to the administration of its criminal justice system is at best entirely speculative hyperbole; in fact, it is belied by the apparent continued functioning of the Texas criminal justice system in the years since Hickman.

This simply is not a situation, as likewise hyperbolized by the Concurrer in today's special concurrence, wherein the bankruptcy court is accused of using "its in rem jurisdiction to ride roughshod over this traditional bastion of state sovereignty." Rather, to a much lesser degree than in either Katz or Hood, the bankruptcy court here is discharging a debt by determining the rights of the State as a creditor, a quintessential exercise of its in rem jurisdiction that indisputably is permitted under Hood and Katz. It matters not under those Supreme Court cases whether the State's judgments against Soileau arose from contracts or forfeitures or torts or strict liability.

### III. Conclusion

The State has sought to avoid discharge of judgments that were

20

rendered in state court against Soileau as the statutory surety on bail bonds that she wrote under Texas's scheme for the release of criminal defendants pending future appearances.  Having earlier failed, in <u>Hickman</u>, to avoid this precise kind of discharge on non-constitutional grounds of statutory interpretation of the Bankruptcy Code, Texas has here taken a second bite at that apple but on an entirely different tack, basing its affirmative efforts to avoid discharge <u>solely</u> on the constitutional ground of Eleventh Amendment sovereign immunity.  Yet the Supreme Court, in <u>Hood</u> and <u>Katz</u>, has left no doubt that the several states remain immutably bound by their long-standing waivers of sovereign immunity under the Bankruptcy Clause of the United States Constitution, at least as to non-adversary <u>in</u> <u>rem</u> discharge proceedings in bankruptcy, like this one.  Accordingly, the judgment of the bankruptcy court, and the district court's affirmance of it, are

AFFIRMED.

EDITH H. JONES, Chief Judge, specially concurring:

I concur in the judgment only. With due respect to the majority, Hood and Katz may dispose of any Eleventh Amendment sovereign immunity claim that Texas could raise here,[1] but those cases do not resolve whether the Bankruptcy Code in fact authorizes the discharge of Soileau's defaulted bail bonds. Currently, this court's precedent equates default on bail bonds with any other contractual obligation and holds such debts dischargeable. Hickman v. Texas (In re Hickman), 260 F.3d 400, 406 (5th Cir. 2001). The State has consistently argued, however, and I agree that Hickman was wrongly decided. While this panel is bound to apply Hickman and reject the State's nondischargeability claim, I urge the court

---

[1] The majority's conclusion is probably correct; nevertheless, the scope of Tennessee Student Assistance Corp. v. Hood, 541 U.S. 440, 124 S. Ct. 1905 (2004), is not unlimited. The Supreme Court specifically noted that it was not holding that every "exercise of a bankruptcy court's in rem jurisdiction will not offend the sovereignty of the State." Id. at 451 n.5, 124 S. Ct. at 1913. Although the Court's broader decision in Central Virginia Community College v. Katz, 546 U.S. 356, 126 S. Ct. 990 (2006), made clear that even actions ancillary to a bankruptcy court's exercise of its in rem jurisdiction will not "in the usual case" offend state sovereignty, the Court did not permit bankruptcy courts always to exercise their jurisdiction without regard to state sovereignty. Id. at __, 126 S. Ct. at 1000. Contractual debts owed to the State are now fair game for bankruptcy resolution, but Katz and Hood recognize that there are still areas of traditional state sovereignty into which the bankruptcy courts cannot tread. See also, State of Texas v. Walker, 142 F.3d 813 (5th Cir. 1998). Thus, it could be argued that the mere fact that this case concerns an in rem proceeding in bankruptcy does not end this court's analysis if the bankruptcy court's exercise of in rem jurisdiction offends traditional state sovereignty over its criminal justice system.

22

to rehear this case en banc and overturn <u>Hickman</u>.

Standing alone, the Bankruptcy Code appears to render Soileau's debt for bond forfeitures nondischargeable. Section 523(a)(7) of the Code states that a debt is nondischargeable "to the extent such debt is for a fine, penalty, <u>or</u> <u>forfeiture</u> payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss, other than a tax penalty." 11 U.S.C. § 523(a)(7) (emphasis added). The panel in <u>Hickman</u> interpreted this language to mean that only "punitive or penal forfeiture[s]" were nondischargeable, and that bail bond forfeitures, which it erroneously interpreted as contractual in nature, were not covered by § 523(a)(7). <u>Id.</u> at 406.

A better approach to § 523(a)(7) was taken by a Third Circuit panel (including now-Justice Alito) that held commercial bail bond forfeitures nondischargeable within the plain meaning of § 523(a)(7). <u>Dobrek v. Phelan</u>, 419 F.3d 259 (3d Cir. 2005). As <u>Dobrek</u> correctly points out, regardless whether bail bonds are contractual in nature, there is no basis for <u>Hickman</u>'s holding that § 523(a)(7) "is restricted in scope to exempt from dischargeability only obligations of a [purely] penal nature," as "forfeitures" are included in § 523(a)(7) without respect to their nature. <u>Dobrek</u>, 419 F.3d at 267 (quoting <u>City of Philadelphia v. Nam</u> (<u>In re Nam</u>), 273 F.3d 281, 287 (3d. Cir. 2001)). That Soileau owes a forfeiture debt to a governmental entity should be dispositive here.

Moreover, state criminal proceedings are not the "usual

23

case" in bankruptcy, and the Supreme Court has refused to allow bankruptcy jurisdiction to interfere with this traditional realm of state authority. In Kelly v. Robinson, 479 U.S. 36, 107 S. Ct. 353 (1986), the Supreme Court noted its "deep conviction that federal bankruptcy courts should not invalidate the results of state criminal proceedings. The right to formulate and enforce penal sanctions is an important aspect of the sovereignty retained by the States." Id. at 47, 107 S. Ct. at 360. Neither Hood nor Katz conflicts with Kelly, whose authoritativeness we inferior courts must recognize. Thus, the question whether bail bond forfeitures in Texas are criminal matters is critical to determining the scope of § 523 (a)(7). In this regard, Hickman seriously misinterpreted Texas law when it held that bail bonds are essentially contractual, not penal, obligations.

As early as 1854, in Gay v. State, 20 Tex. 504 (Tex. 1854), the Texas Supreme Court classified bail bond forfeitures as criminal matters. Again, in Jeter v. State, 86 Tex. 555 (Tex. 1894), the Texas court concluded that a proceeding for the forfeiture of bail bonds is "a criminal case within the Constitution and laws of the State." 86 Tex. at 557 (citing Gay). As seminal criminal law precedents, Gay and Jeter have been repeatedly reaffirmed in recent years. See, e.g., Ex Parte Burr, 185 S.W.3d 451, 452-53 (Tex. Crim. App. 2006); Bailout Bonding Co. v. State, 797 S.W.2d 275, 277 (Tex. App. 1990); State v. Sellers, 790 S.W.2d 316, 321 (Tex. Crim. App. 1990); State ex rel. Vance v.

24

<u>Routt</u>, 571 S.W.2d 903, 906 (Tex. Crim. App. 1978)("[There is] no doubt that a bond forfeiture proceeding is 'criminal in nature.'").

<u>Hickman</u>'s conclusion that "[b]ail bond judgments are not penal sanctions . . . but rather arise from a contractual duty," is thus at odds with over a century of Texas precedent. <u>Hickman</u>, 260 F.3d at 406. The panel in <u>Hickman</u> relied almost exclusively upon <u>Reyes v. State</u>, 31 S.W.3d 343 (Tex. App. 2000), a state appeals court decision which held that "[b]ail bonds are contracts between the surety and the State." <u>Id.</u> at 345. Based on <u>Reyes</u>, <u>Hickman</u> reasoned that the State's classification of bail bonds as forfeitures (<u>i.e.</u>, criminal in nature) was a mere "label," masking their contractual nature. <u>Hickman</u>, 260 F.3d at 405. Such reliance on <u>Reyes</u> was in error. First, the conclusion in <u>Reyes</u> that bail bonds are contractual in nature must be put in context. <u>Reyes</u> concerned a bondsman whose client had absconded; the bondsman wished to be released from liability to the State. The <u>Reyes</u> court held only that the Texas Code of Criminal Procedure would not allow the bondsman to be released from his obligation to the State absent a showing that the bonded defendant failed to appear in court due to "an uncontrollable circumstance that arose from no fault on his [the defendant's] part"; it did not purport to overrule nearly one hundred fifty years of state precedent. <u>Reyes</u>, 31 S.W.3d at 346-47. Further, if <u>Reyes</u> did in fact re-examine the nature of bail bonds in Texas, it did so without a single mention of <u>Gay</u>, <u>Jeter</u>, or their progeny.

Bailout Bonding, another Texas Court of Appeals case, provides a more complete assessment of the State's practices. There, the court noted that although "the surety's liability on the appearance bond would appear to be contractual," in actuality, the "judgment on a bond is not in the nature of a violation of contract." Bailout Bonding, 797 S.W.2d at 277. Bailout Bonding relied upon General Bonding & Casualty Insurance Co. v. State, 165 S.W. 615 (Tex. Crim. App. 1913), which held that though "the action [on the forfeiture of an appearance bond] is not directly to punish the offender . . . it partakes of punishment for an offense against the state, and is not in the nature of a violation of a contract." Id. at 617. In Texas, notwithstanding that the Texas Code of Criminal Procedure Article 22.10 applies certain civil court rules to bail bond proceedings, forfeiture judgments have always been regarded as "penal judgment[s], that is, a judgment in the nature of a fine." Bailout Bonding, 797 S.W.2d at 277; see also Magless v. State, 18 S.W.2d 669, 670 (Tex. Crim. App. 1929)("It is plain, we think, that the sum recoverable for non-compliance with the conditions of a bail bond is a penalty."). In sum, even if the initial relationship between a surety and the State has elements of contract according to Reyes, a forfeiture judgment does not, and is instead a criminal matter.

Finally, assuming arguendo that bail bonds are contracts, even the Hickman panel conceded that a "bail bond contract is sui generis," and "is certainly distinguishable from the typical

26

contract." <u>Hickman</u>, 260 F.3d at 406. <u>Hickman</u> correctly noted that a bail bond is an "integral and essential tool in the administration of the State's criminal justice system." <u>Id.</u> Regardless whether the forfeiture judgment is against a criminal defendant or his sureties, "[a criminal] case is too closely connected with the judgment on the bail bond to be separable from it." <u>Jeter</u>, 86 Tex. at 558. A bail bond proceeding concerns "an instrument to coerce the accused to take his trial; a power incident to every criminal court", and not a mere civil contract. <u>Id.</u>

The fear expressed in <u>Kelly</u>, that the bankruptcy courts would "invalidate the results of state criminal proceedings by erasing debts" is made reality if Soileau is granted a discharge from her debts to the State. <u>Dobrek</u>, 419 F.3d at 265. If bail bondsmen can obtain discharge in bankruptcy of forfeited bond debts, they plainly have less incentive to supervise and assure the appearance of their clients at trial.

<u>Hood</u> and <u>Katz</u> stand for the proposition that a state may be treated as an ordinary creditor in bankruptcy as to its "usual" contractual debts, but they do not answer the statutory question raised here. Informed by <u>Kelly</u>, I would hold that a bankruptcy court may not utilize its <u>in rem</u> jurisdiction to ride roughshod over this traditional bastion of state sovereignty, and I hope that our court will take this case en banc to reconsider <u>Hickman</u> and preserve the integrity and self-sufficiency of the State's criminal

27

procedures.